Erik Benham
221 Town Center West #256
Santa Maria, California 93458
Pro Per



# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION

| | |
|---|---|
| In re | BK No. ND 9:07-bk-10362 RR |
| Maria Vista Estates, A California General Partnership, | Chapter 7 |
| Debtor. | **COMPLANT** |

<table>
<tr><td></td><td>(1)</td><td>FRAUD;</td></tr>
<tr><td></td><td>(2)</td><td>AIDING & ABETTING FRAUD;</td></tr>
<tr><td>ERIK BENHAM</td><td>(3)</td><td>CONVERSION;</td></tr>
<tr><td></td><td>(4)</td><td>CIVIL CONSPIRACY TO COMMIT CONVERSION;</td></tr>
<tr><td>Plaintiff</td><td>(5)</td><td>BREACH OF FIDUCIARY DUTY;</td></tr>
<tr><td></td><td>(6)</td><td>NEGLIGENCE;</td></tr>
<tr><td>vs.</td><td>(7)</td><td>OBSTRUCTION OF JUSTICE;</td></tr>
<tr><td></td><td>(8)</td><td>BANDRUPTCY FRAUD;</td></tr>
<tr><td>FEDERAL DEPOSIT INSURANCE</td><td>(9)</td><td>FORGERY;</td></tr>
<tr><td>CORPORATION, in receivership</td><td>(10)</td><td>FALLACIOUSINESS AGAINST BANKRUPTCY ESTATE;</td></tr>
<tr><td>of Security Pacific Bank; FIDELITY NATIONAL TITLE</td><td>(11)</td><td>EXTRINSIC FRAUD;</td></tr>
<tr><td>COMPANY; EZRA NAMVAR; PENDER</td><td>(12)</td><td>INTRINSIC FRAUD; and</td></tr>
<tr><td>PROPERTIES; MARK PENDER; Dianna Voss and Does 1-100</td><td>(13)</td><td>DECLARATORY RELIEF.</td></tr>
<tr><td>Defendants</td><td></td><td></td></tr>
</table>

Erik Benham, Plaintiff is a creditor and has derivative

standing in the above entitled bankruptcy case, and hereby

respectfully submits this Adversary Complaint against FEDERAL

DEPOSIT INSURANCE CORPORATION, IN RECEIVERSHIP OF SECURITY PACIFIC

1   BANK; FIDELITY NATIONAL TITLE COMPANY; EZRA NAMVAR; PENDER PROPERTIES

2   INCORPORATED; MARK PENDER; and Does 1-100.

3       Erik Benham has standing in the above entitled matter and on

4   behalf of all unsecured creditors seeks to pursue this Derivative

5   Action on behalf of Maria Vista Estates, a California General

6   Partnership. Our sister circuits that acknowledge the doctrine have

7   allowed a bankruptcy court to grant derivative standing to a

8   creditor. Several circuits have recognized such standing when the

9   trustee or debtor-in-possession unreasonably refuses to bring suit

10  on its own. *See, e.g., In re Smart World Techs.*, 423 F.3d at 176;

11  *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel.*

12  *Cybergenics Corp. v. Chinery*, 330 F.3d 548, 583 (3d Cir. 2003) (*en*

13  *banc*); *Fogel v. Zell*, 221 F.3d 955, 965 (7th Cir. 2000); *Canadian*

14  *Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. ( In re Gibson Group,*

15  *Inc.), 66 F.3d 1436*, 1440-41 (6th Cir. 1995); *La. World Exposition*

16  *v. Fed. Ins. Co.*, 858 F.2d 233, 247-48 (5th Cir. 1988). Erik Benham,

17  on behalf of all unsecured creditors of the Maria Vista Estates, a

18  California General Partnership is bringing suit against the above

19  defendants because Chapter 7 Trustee of Maria Vista Estates, a

20  California General Partnership has refused to do what is in the best

21  interest of the unsecured creditors.

22      Plaintiff, Erik Benham, on information and belief, is informed after a

23  reasonable inquiry under the circumstances, and for causes of action against

24  the Defendants, and each of them, allege as follows:

25                              **PARTIES**

26  1.      Plaintiff ERIK BENHAM ("Plaintiff" or "Benham") is a creditor

27  doing business within the County of San Luis Obispo.

28                              2

2.      Plaintiff is informed and believes that MARIA VISTA ESTATES, A CALIFORNIA GENERAL PARTNERSHIP ("MVE") is a housing development project in San Luis Obispo and is currently in a Chapter 7 Bankruptcy.

3.      Plaintiff is informed and believes that defendant FEDERAL DEPOSIT INSURANCE CORPORATION (hereinafter "FDIC") is a governmental agency by virtue of the laws of the United States.  Plaintiff is further informed and believes that the FDIC has become the receiver of SECURITY PACIFIC BANK, a California state bank (hereinafter "Bank").  Both the FDIC and the Bank are subject to the personal jurisdiction of this Court as they are doing business in this State and County of San Luis Obispo and claim interests in real property assets.

4.      Plaintiff is informed and believes that defendant FIDELITY NATIONAL TITLE COMPANY (hereinafter "Fidelity") is a national title and escrow corporation organized and existing under the laws of the State of California and doing business in the State of California and County of San Luis Obispo.

5.      Plaintiff is informed and believes that defendant Diana Voss (Hereinafter "Voss") is a notary and employee of Fidelity licensed under the State of California and doing business in the State of California and County of San Luis Obispo.

6.      Plaintiff is informed and believes that defendant EZRA NAMVAR (hereinafter "Namvar") is an individual who is a citizen of the State of California.  Plaintiff is further informed that Namvar was, at all times relevant, the controlling shareholder of the Bank.

7.      Plaintiff is informed and believes that defendant MARK PENDER (hereinafter "Pender") is the President of PENDER PROPERTIES INCORPORATED. a CALIFORNIA CORPORATION (hereinafter "PPI") organized and existing under the laws of the State of California and doing business in the State of California and County of San Luis Obispo.

8.    Plaintiff is informed and believes that defendant Pender is an individual who is a citizen of the State of California.  Plaintiff is further informed that Pender was, at all times relevant, the controlling shareholder of the PPI and PPI was one half shareholder of MVE.

9.    Plaintiff is informed and believes that at various times alleged herein, the Bank and Fidelity, the FDIC and Fidelity, Voss and Fidelity, Namvar and Fidelity, and Namvar, the Bank, PPI and Pender have acted and failed to act as hereinafter alleged, each of the defendants serving as an agent of certain other defendants, and in so acting or failing to act, serving within the course and scope of such agency.  Moreover, Plaintiff is informed and believes, and based thereon alleges, that the acts and conduct of each defendant herein alleged were known to, authorized by and ratified by the remaining defendants and each of them.

10.    Plaintiff, upon information and belief, alleges that at all times mentioned herein, there always existed and presently exists a commonality and unity of interest and ownership between and among Namvar and [the Bank] such that any individuality and separateness between these defendants have ceased and each such defendant is the alter ego of the other.  An injustice will result unless the theoretical entities of defendants Namvar disregarded and Namvar and the Bank are held liable for the obligations of the entity defendants.

11.    The true names and capacities, whether individual, corporate, associate, or otherwise of Does 1 through 100, inclusive, are unknown to Plaintiff.  Plaintiff therefore sues such defendants by fictitious names and will amend this complaint to insert their true names and capacities once the

---

- For the purpose of this complaint Voss and Fidelity shall be identified as Voss, Fidelity, or included within the identifying term "defendant (s)".

1  same have been ascertained.  Plaintiff is informed and believes and thereon

2  alleges that each such fictitiously-named defendant is in some manner, means

3  or degree connected with the matters herein alleged and is liable to Plaintiff

4  thereon or has some liability or interest adverse to Plaintiff. (Collectively,

5  defendants FDIC, Fidelity, Voss, Namvar, Pender and DOES 1-100 referred to as

6  "defendants.")

7                              **BACKGROUND FACTS**

8      12.    Maria Vista Estates ("MVE") is a California General Partnership

9  that owned and developed a 77-lot residential subdivision in Nipomo,

10 California described, at certain times, as Tracts 1802 and 1856 of the County

11 of San Luis Obispo (the "Project").  The Project was to be built in three (or

12 more) separate phases with Phase I consisting of 25 homes, Phase II consisting

13 of 15 homes, and Phase III the remaining 37 lots.

14     13.    Mark Pender ("Pender"), President of Pender Properties

15 Incorporated ("PPI"), and Erik Benham ("Benham"), Member Manager of BenIng

16 Company, L.L.C. ("BenIng"), co-founded of MVE and are the principals of MVE

17 through said entities.

18     14.    During the formation of MVE, Plaintiff and his related entities,

19 as then owner of the land now known as the MVE project, transferred title to

20 said land in exchange for MVE's execution of a promissory note in the amount

21 of $6,385,000 and related Deed of Trust recorded against the Property.  True

22 and correct copies of the Promissory Note made by MVE in favor of Plaintiff

23 and the recorded Deed of Trust are annexed hereto as **Exhibits "1"** and **Exhibit**

24 **"2"**, respectively.

25     15.    As alleged herein, FEDERAL DEPOSIT INSURANCE CORPORATION, ("FDIC")

26 AS RECEIVER FOR SECURITY PACIFIC BANK ("Bank") And FIDELITY NATIONAL TITLE

27 ("Fidelity"), and others participated in a scheme to defraud, aided and

28

1  abetted fraud and or conspired to defraud MVE to the financial devastation of
2  MVE and others.

3      16.      Defendant FDIC continues to collude and maintain the fraud of the
4  Bank and Fidelity as receiver for Bank to the financial devastation of MVE for
5  their own benefit with no regard for the rights and facts provided to them on
6  several occasions below.

7      17.      On or about December 28, 2004, Bank (then known as Network
8  Community Bank) entered into a certain Construction Loan Agreement, whereby
9  Bank agreed to loan MVE certain funds ($15,800,000) necessary to construct
10 Phase I (25 homes) at the MVE Project.  A true and correct copy of the Phase I
11 Construction Loan Agreement is annexed hereto as **Exhibit "3"**.

12     18.      Significantly, the Construction Loan Agreement expressly indicates
13 that the collateral for said loan was to consist solely of the 25 lots of MVE
14 comprising MVE's Phase I.  No reference or other mention was made to any other
15 collateral and no such other collateral was intended.

16     19.      In conjunction with the Construction Loan, Fidelity recorded in
17 the Official Records of the County of San Luis Obispo, a certain Construction
18 Deed of Trust on January 7, 2005 for the benefit of the Bank.  A true and
19 correct copy of the Construction Deed of Trust is annexed hereto as **Exhibit
20 "4"**.

21     20.      In April 2005, Bank requested that MVE's principals sign documents
22 titled "Modification" which was to correct the name of street and city address
23 for MVE, the borrower, from South Main to West Main and from Santa Monica to
24 Santa Maria.  On at least two occasions, at defendants' request, Plaintiff
25 signed the Modification to correct the mistake.  A true and correct copy of
26 the referenced Modification is annexed hereto as **Exhibit "5"**.

27     21.      Diana Voss ("Voss"), a notary public then employed by Fidelity,
28 has attested, falsely, "that on May 16, 2005 Mark Pender ("Pender") and Erik

6

Benham ("Plaintiff") both appeared and signed her notary book and re-signed a re-recorded "corrected" Deed of Trust, assignment of rents, hazardous Substance Certification and Indemnity Agreement". A true and correct copy of Voss's notary book signature page is annexed hereto as **Exhibit "6"**.

22.    Notwithstanding Voss's testimony and claims, neither Pender nor Plaintiff signed Voss's notary book on May 16, 2005. Indeed, Pender has affirmed in his deposition on December 2, 2008 that he was not in San Luis Obispo nor could he have been on May 16, 2005 and that he was in Yucaipa, Ontario, and other locations in the Los Angeles Basin, more than 200 miles from San Luis Obispo County. Mr. Pender's unavailability on that date is confirmed by his 2005 calendar. A true and correct copy of the relevant portion of Mr. Pender's calendar is annexed hereto as **Exhibit "7"**.

23.    Even though neither Pender nor Plaintiff executed the "corrected" Deed of Trust (the "Forged Deed of Trust"), Fidelity, on behalf of the Bank, recorded said document in the Official Records of the County of San Luis Obispo.

24.    Significantly, the Forged Deed of Trust purported to increase the collateral for the Phase I Construction Loan such that the loan now purported to include not only the 25 lots (and constructed homes), the originally-contemplated collateral, but also the 37 buildable lots (and at the time Phase II, 15 homes) comprising Phase III of the MVE property. The new collateral description was attached to the back of a recorded January 7, 2009 Deed of Trust (refer to Exhibit "4") with a new California All-Purpose Acknowledgment identified on the description of attached document Title or Type of Document as a "Deed of Trust" with the bottom of the document indicating "end of document" with a new Notary Public Signature and Property description "Exhibit "A" signed by Voss (the "Forged Document"). A true and correct copy of the Forged Documents is annexed hereto as **Exhibit "8"**.

7

25.     As stated above, neither Plaintiff nor Pender ever agreed or signed an Amended Deed of Trust or a Subordination Agreement pertaining to Exhibit "1" nor did they ever knowingly agree to increase the Bank's collateral at any time.

26.     In or about May 2005 Bank was audited by the FDIC. Emails from the Bank indicate that the FDIC was scrutinizing the loans being made by Bank. Upon information and belief, Plaintiff alleges that the Bank unilaterally increased the collateral without the knowledge of Plaintiff in order to placate the FDIC's concerns about its loan to MVE by adjusting the loan-to-value ratios and to allow the Bank to continue to provide loans to unrelated parties. A true and correct copy of the email from the Bank and the FDIC are annexed hereto as **Exhibit "9"**.

27.     In March 2008, the Bank produced a copy of a letter titled acknowledgment of change in property description dated June 20, 2005. This document identified the additional property which was identified within the fraudulently recorded Amended Deed of Trust recorded on May 24, 2005. A true and correct copy of the Acknowledgment is annexed hereto as **Exhibit "10"**.

28.     Neither Plaintiff nor Pender were ever made aware of the Acknowledgment purportedly dated June 20, 2005 until the Bank produced said document in March 2008.

29.     In November 2005, the Bank provided a second loan for the construction of Phase II of the MVE Project comprising of 15 homes within Tract 1802 of the MVE Project. A true and correct copy of the document evidencing said loan is annexed hereto as **Exhibit "11"**.

30.     At the request of the Bank, and in conjunction with the funding of the Phase II loan, Plaintiff signed a Subordination Agreement, effectively subordinating Plaintiff's loan to MVE (described below) limited to only the

Phase II homes of the project.  A true and correct copy of the Subordination Agreement is annexed hereto as **Exhibit "12"**.

31.     MVE filed for Chapter 11 Bankruptcy March 23, 2007 and converted to one under a Chapter 7 on June 25, 2008, because Pender of PPI refused to sign the Proposed Plan of Reorganization and Disclosure Statement.

32.     On December 1, 2006 the Bank filed an action in State Court seeking a Judgment against Benham and Pender for a $23,000,000.00. The Court weighed favorable for the Bank and the Judgment was granted. Soon thereafter the Bank sought an Abstract of Judgment and retrieved $40,000.00 from Pender's bank account on or about April 2008.

33.     In 2008, Namvar sought to obtain and entered into a forbearance agreement. Per Pender, the forbearance agreement included but was not limited to; Pender shall not negotiate with Plaintiff to any extent regarding MVE and/or Benham. In addition, Pender shall not move to file a claim against the Bank, Namvar or Fidelity. In return, the Bank will not seek to enforce the Judgment against Pender for the Abstract of Judgment. To date, the FDIC has honored the forbearance agreement.

34.     Plaintiff believes Namvar negotiated the forbearance agreement with Pender prior to the MVE conversion to one a Chapter 7 bankrupcty.

35.     Namvar, the Bank and Pender colluded to defraud the MVE Bankruptcy Estate. The FDIC continues to overlook the actions of Namvar, the Bank, Fidelity, Voss, Pender, and PPI and moves to defend all actions taken in the above Adversary Complaint.

**FIRST CAUSE OF ACTION**

**FRAUD**

**(Against all Defendants)**

36.    Plaintiff incorporates by reference each of the allegations contained in Paragraphs 1 through 35, inclusive.

37.    By manufacturing documents, without permission, with the intention of increasing the collateral securing the Phase I loan, Defendants have defrauded Plaintiff and, in addition, has perpetrated extrinsic fraud on this Court and the bankruptcy court in the case titled Security Pacific Bank v. Maria Vista Estates, et al. (Case No. CV 061009) and in the bankruptcy cases titled In re Erik Benham (U.S.B.C. C.D.Cal. ND-08-11432) and In re Maria Vista Estates (U.S.B.C. C.D.Cal. ND-07-10362).

38.    As noted in the Miller & Star treatise on California Real Estate (3rd Ed.) at section 6.26 (Vol. 3, p.68):

> [I] the [escrow] agent clearly knows of a fraud on a party to the escrow being committed by the other party in the escrow, the agent's fiduciary obligations would preclude it from proceeding with the escrow without disclosure to the defrauded principle.  When the agent proceeds to perform the escrow with knowledge of the fraud, it is in effect a participant in the fraud and is liable to the defrauded party if the fraud is not disclosed. [emphasis added]

See California Civil Code Section 2306 (An agent can never have authority, either actual or ostensible, to do an act which is, and is know or suspected by the person with whom he deals, to be fraud on the principal).  See also Moe v. Transamerica Title Ins. Co., 21 Cal. App. 3d 289, 306 (1971).

39.      Fidelity, in doing the acts herein alleged, including falsifying documents and the Notary book joined the Bank to effectively defraud the Plaintiff of significant value of Plaintiff's Deed of Trust encumbering land and facilitating the fraudulent transaction without disclosing the fraud to the Plaintiff and, as such, aided and abetted, and conspired with, the Bank in completing its fraud.

40.      Fidelity is a fiduciary in connection with any escrow or transaction handled by Fidelity and a fiduciary is required to act with the utmost good faith and candor, two affirmative duties which Fidelity breached in the Bank Fraud within this transaction resulting in damage to MVE and its unsecured creditors.

41.      The conduct of Fidelity as a fiduciary in perpetrating the illegal scheme described above also constitutes constructive fraud under California law.

42.      Plaintiff is informed and believes and thereon alleges that Fidelity executives knew about, ratified, and approved Voss's conduct thereby having been approved by senior level of management at Fidelity to receive such approval.

43.      In addition, Plaintiff is informed and believes and thereon allege that Fidelity illegally altered the collateral descriptions knowing that the initial intent of the Plaintiff was clearly identified in the initial Phase I Deed of Trust and Phase I Construction Loan Agreement signed by Plaintiff and Pender.

44.      Plaintiff is informed and believes that since a Title Guaranty issued would have been above the "High Liability" limit and would place Fidelity at risk if the document was not altered at the request of Bank and would therefore been at risk of litigation if Fidelity did not alter the

11

1   document as a result of the pressure Bank must have been under as the FDIC was

2   auditing their loans and the ability to loan.

3       45.     As alleged above, Fidelity aided and abetted in the Banks' scheme

4   by, among other things, creating a fraudulent Deed of Trust (see Exhibit "8")

5   and recording the document reflecting additional collateral without the

6   consent of the Plaintiff.  The falsification of the documents in addition to

7   the Notary book confirms that such a scheme took place.

8       46.     Plaintiff is informed and believes that the Bank, Namvar and

9   Fidelity caused to embezzle additional properties of the MVE estate for its

10  own gain.

11      47.     Plaintiff is informed and believes that Fidelity caused to forge

12  documents with the instructions of Namvar and the Bank fallaciously to

13  encumber additional properties to support new financing for the Bank.

14      48.     Plaintiff believes Namvar and the Bank colluded to defraud the MVE

15  Bankruptcy Estate by moving to negotiation a forbearance agreement with Pender

16  for the assurance of MVE failure to reorganize.

17      49.     Plaintiff believes Pender fallaciously agreed to the forbearance

18  agreement for self protection in which breached his fiduciary duty to MVE and

19  MVE creditors.

20      50.     Plaintiff believes that the FDIC has continued to: conspire to

21  cause intrinsic fraud on this honorable court; the obstruction of justice for

22  the benefit of the Bank, Namvar, Fidelity, and now FDIC; collude to hide the

23  fraud perpetrated against MVE by the Defendants.

24      51.     As a direct and proximate result of the fraudulent conduct of

25  defendants, MVE has suffered substantial actual and consequential damages

26  according to proof.

27

28

52.    Defendants' conduct was willful, wanton, malicious and with disregard of MVE's rights so as to entitle MVE to an award of punitive and exemplary damages.

### SECOND CAUSE OF ACTION

### (Aiding and Abetting Fraud)

### (Against All Defendants)

53.    Plaintiff re-alleges and incorporate by reference all of the allegations of this complaint set forth in paragraphs 1 through 52, inclusive, above.

54.    The conduct of defendants as described herein was a result of a conscious decision to participate as alleged, supra, and done for the purpose of defrauding and aiding abetting Bank to arrange and conspire to take property in which Bank was not knowingly entitled.

55.    Specifically Fidelity helped Bank to knowingly facilitate and aided and abetted as described, supra.

56.    Fidelity knew that the Bank was breaching their fiduciary duties, committing fraud, converting Plaintiff's property.  Fidelity substantially assisted and/or aid, abetted, or encouraged the Bank in their unlawful actions by among other things to cover up the acts and involvement for about three years.

57.    Fidelity purportedly identified and recorded documents without any knowledge of the Plaintiff as though Fidelity had completed a legitimate escrow to provide a Deed of Trust to Bank.

58.    Pender's knowledge of Fidelity, Namvar and the Banks actions against MVE has been well documented. Namvar and the Bank moved to negotiate a forbearance agreement with Pender agreeing to set the abstract judgment aside in return for Pender's cooperation regarding the forged documents that encumbered MVE properties assuring MVE Chapter 11 Bankruptcy failed.

13

1  Therefore, Pender's participation, he to is aiding and abetting fraud against
2  MVE.

3     59.    Plaintiff is informed and believes and thereon alleges the last
4  overt act in pursuit of this conspiracy occurred in the last quarter of 2008.

5     60.    As a direct and proximate result of defendants in aiding and
6  abetting Bank's commission of unlawful actions, Plaintiff has suffered
7  substantial actual and consequential damages according to proof.

8     61.    Defendants' actions were willful, wanton, malicious and with
9  disregard of Plaintiff's rights, and were a conscious disregard of Plaintiffs'
10 rights to justify the award of punitive damages.

11                          **THIRD CAUSE OF ACTION**

12                              **(Conversion)**

13                          **(Against All Defendants)**

14    62.    Plaintiff repeats, re-alleges and incorporates by reference all of
15 the allegations of the Complaint set forth in paragraphs 1 through 61,
16 inclusive, above.

17    63.    Defendants, and each of them, owed a duty to MVE to use ordinary
18 care to prevent MVE from being foreseeably injured as a result of their
19 negligent conduct.

20    64.    Namvar, the Bank and Fidelity preformed acts of conversion to
21 encumber additional properties in which belonged to MVE.

22    65.    Pender, PPI and the FDIC have moved to adopt the actions of
23 Namvar, the Bank and Fidelity, Pender and PPI by keeping silent per the
24 forbearance agreement, and the FDIC by continuing to defend the actions of
25 Namvar, the Bank and Fidelity with the MVE Bankruptcy Estate.

26    66.    In negligently failing to perform the duties of a governmental
27 agency, the FDIC continued failure to investigate the red flags and complete
28 failure to notify MVE, Bank and the FDIC as receiver for Bank, Fidelity,

14

1  Namvar, Pender, PPI and DOES 1-100 caused MVE to suffer damages which would

2  have been prevented or at least substantially reduced had Namvar, the Bank and

3  Fidelity not caused the conversion of MVE assets.

4      67.    Plaintiff is informed and believes and thereon alleges that

5  Namvar, the Bank, Fidelity, the FDIC, Pender and PPI ratified, approved, and

6  condoned the negligent acts and breaches of duty of Fidelity cause conversion

7  of MVE properties.

8      68.    The acts of the Bank and now the FDIC as receiver for the Bank,

9  Fidelity, Namvar, Pender, PPI and DOES 1-100, and each of them, breached their

10 duty through their conduct as set forth above, MVE and its unsecured creditors

11 was directly and foreseeably injured as a result of such negligence.

12 Plaintiff did not discover that MVE had claims for conversion against Bank and

13 the FDIC as receiver for Bank, Fidelity, Namvar, Pender, PPI and DOES 1-100

14 until less than three weeks prior to filing this action.

15     69.    As a direct and proximate result of the foregoing negligent

16 conduct, MVE and its unsecured creditors has suffered actual and consequential

17 damages according to proof.

18                    **FOURTH CAUSE OF ACTION**

19                **(Civil Conspiracy to Commit Conversion)**

20                    **(Against All Defendants)**

21     70.    Plaintiff repeats re-alleges and incorporates by reference all of

22 the allegations of this complaint set forth in paragraphs 1 through 69,

23 inclusive, above.

24     71.    At all times mentioned above herein, Defendants, collectively,

25 have committed conversion. Defendant's still continue to withhold and

26 perpetuate the taking of the property through the false Deed of Trust and have

27 converted such property by including the property within their estate

28 currently under receiver by the FDIC who now also continues the scheme and

15

1  conspiracy to take assets which are clearly not an asset of Bank for their own

2  financial benefit with the assistance of defendants.

3      72.      Defendants with knowledge did the act of converting Plaintiffs

4  Phase I Deed of Trust in a conspiracy which converted Plaintiff's Deed of

5  Trust to an implied asset of Bank now under receiver of the FDIC which is

6  continuing the act described supra.

7      73.      The FDIC continues with Fidelity and Pender to prevent the truth

8  from being discovered regarding the illegally altered Deed of Trust.

9      74.      Fidelity knew that the Bank was breaching their fiduciary duties,

10  committing fraud, converting Plaintiff's property.  Defendants substantially

11  assisted and/or aid, abetted, or encouraged Bank in their unlawful actions by

12  among other things to cover up the acts and involvement for about three years.

13      75.      Plaintiff is informed and believes and thereon alleges the last

14  overt act in pursuit of this conspiracy occurred in the last quarter of 2008.

15      76.      As a direct and proximate result of Fidelity conduct in aiding and

16  abetting Bank commission of unlawful actions. MVE has suffered substantial

17  actual and consequential damages according to proof.

18      77.      Fidelity ratified the acts of its managers and employees,

19  particularly Voss and Harwell.  Fidelities' actions were a willful, wanton,

20  malicious and with disregard of MVEs' rights, and were a conscious disregard

21  of MVEs' rights to justify the award of punitive damages.

22                        **FIFTH CAUSE OF ACTION**

23                        **(Breach of Fiduciary Duty)**

24                        **(Against Defendants)**

25      78.      Plaintiff repeats, re-alleges and incorporates by reference all of

26  the allegations of the Complaint set forth in paragraphs 1 through 77, above.

27      79.      At all times a fiduciary relationship existed between MVE, Bank,

28  Namvar, Fidelity, and Pender and DOES 1-100, and each of them, in performing

                                    16

1  their responsibilities as a commercial lending institution and a title company

2  providing title insurance, escrow, and notarization services.  As such, those

3  fiduciary duties encompassed duties of fidelity, trust, loyalty, honesty, and

4  due care through which MVE and Defendants had to carry out their duties and

5  responsibilities in a fair, just, and equitable manner in the best interest of

6  MVE, and each of them, and not in the furtherance of their own personal

7  financial interests or at the expense of, or in derogation of, the best

8  interest of MVE.

9      80.    The Bank and FDIC now as receiver for the Bank, Fidelity, Pender,

10  PPI and DOES 1-100, and each of them, engaged in conduct described in detail

11  above in breach of their fiduciary duties to MVE and others and each of them.

12  As a direct and proximate result of the conduct of the Bank and FDIC as

13  receiver for Bank, Namvar, Fidelity, Pender, PPI and DOES 1-100, and each of

14  them, MVE has suffered substantial actual and consequential damages according

15  to proof at the time of trial.

16      81.    Plaintiff is informed and believes and thereon alleges that

17  Fidelity ratified, approved, and condoned the breaches of fiduciary duties of

18  Fidelity.

19      82.    The acts of Bank and now the FDIC as receiver for Bank, Fidelity,

20  Namvar, Pender, PPI and DOES 1-100, and each of them, were willful, wanton,

21  malicious and in conscious disregard of the rights of MVE and others,

22  justifying the imposition of exemplary damages in an amount sufficient to

23  punish and make an example of Bank and the FDIC now as the receiver for Bank,

24  Fidelity, Namvar, Pender, PPI and DOES 1-100 and each of them.

25

26

27

28

17

### SIXTH CAUSE OF ACTION

#### (Negligence)

#### (Against All Defendants

83.    Plaintiff repeats, re-alleges and incorporates by reference all of the allegations of the Complaint set forth in paragraphs 1 through 82, inclusive, above.

84.    Defendants, and each of them, owed a duty to MVE to use ordinary care to prevent MVE from being foreseeably injured as a result of their negligent conduct.

85.    Fidelity is a fiduciary in all escrow transactions and as a title company on the escrow with Bank and the FDIC as receiver for Bank and other transactions in which it was involved, acted with scrupulous bad faith and candor, the scheme described herein could not have been carried out, and the Plaintiff would not have and would not continue to suffer the losses and damages of the magnitude which the MVE has suffered, and continues to suffer.

86.    In the negligently failing to perform the duties of an escrow holder, title company, and notary, and continued failure to investigate the red flags and complete failure to notify MVE, Bank and the FDIC as receiver for Bank, Fidelity, Namvar, Pender, PPI and DOES 1-100 caused MVE to suffer damages which would have been prevented or at least substantially reduced had the Namvar, the Bank and Fidelity not acted negligently.

87.    Plaintiff is informed and believes and thereon alleges that Fidelity ratified, approved, and condoned the negligent acts and breaches of duty of Fidelity.

88.    The acts of Bank and now the FDIC as receiver for Bank, Fidelity, Namvar, Pender, PPI and DOES 1-100, and each of them, breached their duty through their conduct as set forth above, MVE was directly and foreseeably injured as a result of such negligence.  MVE did not discover that MVE had

18

1  claims for negligence against Bank and the FDIC as receiver for Bank,

2  Fidelity, Namvar, Pender, PPI and DOES 1-100 until less than two years prior

3  to filing this action.

4      89.    As a direct and proximate result of the foregoing negligent

5  conduct, MVE has suffered actual and consequential damages according to proof.

6                          **SEVENTH CAUSE OF ACTION**

7                          **(Obstruction of Justice)**

8                          **(Against All Defendants)**

9      90.    Plaintiff repeats, re-alleges and incorporates by reference all of

10  the allegations of the Complaint set forth in paragraphs 1 through 89,

11  inclusive, above.

12     91.    Defendants, and each of them, owed a duty to MVE and caused to

13  obstruct justice preventing MVE to move forward in a chapter 11 bankruptcy and

14  to the court for causing excessive litigation disclosing faults hoods in which

15  caused MVE being foreseeably injured as a result of their negligent conduct.

16     92.    Namvar, the Bank, Fidelity, Pender, PPI, and later the FDIC caused

17  an obstruction of justice attempting to interfere with the

18  administration of the courts, the judicial system.

19     93.    Namvar, on behalf of the Bank and Fidelity moved to file

20  three adversary complaints and Motion for Relief from Stay regarding

21  certain Real Property in the MVE Bankruptcy Estate against MVE and

22  Plaintiff to cause the Court to shift the Courts attention on MVE

23  and Plaintiff while claiming allegations causing the court to make

24  decisions regarding MVE in favour of the Bank and later FDIC.

25     94.    Namvar, on behalf of the Bank and Fidelity pursued Pender of PPI

26  to enter into a forbearance agreement, whereas Pender and PPI was not limited

27  to as a result: not sign the proposed plan and disclosure statement that

28  ultimately caused MVE to convert to Chapter 7 Bankruptcy May 1, 2008; not to

                                    19

1  pursue any claims against Namvar, the Bank and Fidelity on behalf of MVE; not

2  to negotiate any deals with Plaintiff on behalf of MVE; and the Bank would not

3  pursue an abstract of judgment against Pender and PPI. The forbearance

4  agreement and above terms was later extended with and by the FDIC.

5      95.      In the negligently failing to perform the duties of an owner of

6  MVE, MVE was forced into Chapter 7 Bankruptcy. Pender of PPI signed the

7  forbearance agreement allowing Namvar, the Bank, Fidelity and now FDIC and

8  DOES 1-100 causing MVE to suffer damages which would have been prevented or at

9  least substantially reduced had Namvar, the Bank and Fidelity not acted

10  negligently.

11      96.      Plaintiff is informed and believes and thereon alleges that Pender

12  condoned the negligent acts and breaches of duty of Namvar, the Bank, Fidelity

13  and now FDIC for personal gain.

14      97.      The acts of Bank and now the FDIC as receiver for Bank, Fidelity,

15  Namvar, Pender, PPI and DOES 1-100, and each of them, obstructed justice

16  through their conduct as set forth above, the MVE was directly and foreseeably

17  injured as a result of such negligence.  Plaintiff did not discover that MVE

18  had claims to this extent for obstruction of justice against Bank and the FDIC

19  as receiver for Bank, Fidelity, Namvar, Pender, PPI and DOES 1-100 until less

20  than two months prior to filing this action.

21      98.      As a direct and proximate result of the foregoing obstruction of

22  justice, MVE has suffered actual and consequential damages according to proof.

23

24

25

26

27

28

## EIGHTH CAUSE OF ACTION

### (Bankruptcy Fraud)

### (Against All Defendants)

99.     Plaintiff repeats, re-alleges and incorporates by reference all of the allegations of the Complaint set forth in paragraphs 1 through 98, inclusive, above.

100.     Defendants, and each of them, owed a duty to MVE and caused to defraud the MVE Bankruptcy Estate by fraudulently hide property that belongs to the MVE Bankruptcy Estate.

101.     Namvar, the Bank, Fidelity, Pender, PPI, and later the FDIC caused and continue to defraud the MVE Bankruptcy Estate by concealing the fraudulent Deed of Trust in which encumbered additional properties of the MVE Bankruptcy Estate.

102.     Pender of PPI secretly entered into a forbearance agreement with Namvar and the Bank and now with the FDIC allowing MVE to be converted to a Chapter 7 Bankruptcy this was to and is to hide the fraudulent transfer of certain real property of MVE.

103.     Namvar, the Bank, Fidelity, FDIC, Pender, and PPI have colluded to defraud the Bankruptcy Estate of MVE and the misconduct by these persons and/or entities have been involved in or contemplates being involved in the formal bankruptcy proceeding.

104.     Namvar, on behalf of the Bank and Fidelity pursued Pender of PPI to enter into a forbearance agreement, to further hide the fraudulent transfer. The importance of MVE's failure to reorganize was a major factor to conceal the fraudulent transfer, now being concealed by the FDIC.

105.     In the negligently failing to perform the duties of an owner of MVE, Pender of PPI signed the forbearance agreement allowing Namvar, the Bank, Fidelity and now FDIC and DOES 1-100 to continue causing MVE to suffer damages

21

1  which would have been prevented or at least substantially reduced had Namvar,

2  the Bank, Fidelity, FDIC, Pender and PPI had not secretly entered into the

3  alleged forbearance agreement.

4      106.    Plaintiff is informed and believes and thereon alleges that Pender

5  condoned the negligent acts and breaches of duty of Namvar, the Bank, Fidelity

6  and now FDIC for personal gain therefore without regard to effect of the MVE

7  Bankruptcy Estate.

8      107.    The acts of Bank and now the FDIC as receiver for Bank, Fidelity,

9  Namvar, Pender, PPI and DOES 1-100, and each of them, causing Bankruptcy fraud

10  through their conduct as set forth above, the MVE was directly and foreseeably

11  injured as a result of such Bankruptcy fraud.  Plaintiff did not discover that

12  MVE had claims to this extent for Bankruptcy fraud against Bank and the FDIC

13  as receiver for Bank, Fidelity, Namvar, Pender, PPI and DOES 1-100 until less

14  than two months prior to filing this action.

15      108.    As a direct and proximate result of the foregoing Bankruptcy

16  fraud, MVE has suffered actual and consequential damages according to proof.

17                          **NINTH CAUSE OF ACTION**

18                              **(Forgery)**

19                          **(Against All Defendants)**

20      109.    Plaintiff repeats, re-alleges and incorporates by reference all of

21  the allegations of the Complaint set forth in paragraphs 1 through 108,

22  inclusive, above.

23      110.    Defendants, Namvar, the Bank and Fidelity, created and

24  falsified written documents, altering the genuine Deed of trust,

25  with the intent to defraud the MVE Estate. The FDIC, Pender and PPI

26  have colluded to hide the fraud of forgery and therefore are an

27  accessory to the crime.

28

111.    Namvar, the Bank, Fidelity, Pender, PPI, and later the FDIC continue to defraud the MVE Bankruptcy Estate by concealing the fraudulent Deed of Trust in which encumbered additional properties of the MVE Bankruptcy Estate.

112.    Namvar, the Bank, Fidelity, FDIC, Pender, and PPI have colluded to defraud the Bankruptcy Estate of MVE and the misconduct by these persons and/or entities have been involved in or contemplates being involved in the formal bankruptcy proceeding.

113.    Namvar, on behalf of the Bank and Fidelity pursued Pender of PPI to enter into a forbearance agreement, to further hide the fraudulent transfer. The importance of MVE's failure to reorganize was a major factor to conceal the fraudulent transfer, now being concealed by the FDIC.

114.    In the negligently failing to perform the duties of an owner of MVE, Pender of PPI signed the forbearance agreement allowing Namvar, the Bank, Fidelity and now FDIC and DOES 1-100 to continue causing MVE to suffer damages which would have been prevented or at least substantially reduced had Namvar, the Bank, Fidelity, FDIC, Pender and PPI had not secretly entered into the alleged forbearance agreement.

115.    Plaintiff is informed and believes and thereon alleges that Pender condoned the negligent acts and breaches of duty of Namvar, the Bank, Fidelity and now FDIC for personal gain therefore without regard to effect of the MVE Bankruptcy Estate.

116.    The acts of Bank and now the FDIC as receiver for Bank, Fidelity, Namvar, Pender, PPI and DOES 1-100, and each of them, causing Bankruptcy fraud through their conduct as set forth above, the MVE was directly and foreseeably injured as a result of such Bankruptcy fraud.

117.    Plaintiff did not discover that MVE had claims to this extent for Bankruptcy fraud against Bank and the FDIC as receiver for Bank, Fidelity,

1 | Namvar, Pender, PPI and DOES 1-100 until less than three weeks prior to filing
2 | this action.

3 | 118.    As a direct and proximate result of the foregoing forgery, MVE has
4 | suffered actual and consequential damages according to proof.

5 | ### TENTH CAUSE OF ACTION

6 | ### (Fallaciousness Against Bankruptcy Estate)

7 | ### (Against All Defendants)

8 | 119.    Plaintiff repeats, re-alleges and incorporates by reference all of
9 | the allegations of the Complaint set forth in paragraphs 1 through 118,
10 | inclusive, above.

11 | 120.    Defendants, Namvar, the Bank, Fidelity, Pender, PPI, and the FDIC
12 | continue fallaciousness against the MVE Bankruptcy Estate, Pender and
13 | PPI by signing a forbearance agreement agreeing to see MVE convert
14 | to a Chapter 7 Bankruptcy and not assisting Plaintiff in any
15 | negotiations to move forward with MVE project for the sake of paying
16 | its unsecured creditors; Namvar, the Bank, and Fidelity by filling
17 | numerous adversary complaints and a Motion for Relief from Stay on
18 | certain real property to hide the fraudulent documents forged by
19 | Namvar, the Bank and Fidelity defrauding MVE Bankruptcy Estate so
20 | that MVE could not pay its unsecured creditors; and FDIC for doing
21 | everything in its power to cause this court's diversion of the truth
22 | in order to fraudulently encumber additional properties while the
23 | unsecured creditors are left with little or nothing.

24 | 121.    Namvar, the Bank, Fidelity, FDIC, Pender, and PPI actions
25 | in the MVE Bankruptcy have been fallacious: Pender and PPI reasons
26 | is due to a abstract judgment of over 23 million dollars in favour
27 | of the Bank and now FDIC; Namvar, the Bank, and Fidelity is due to

28

24

1 forged documents perpetrated by Namvar, the Bank and Fidelity; and

2 the FDIC to hold additional assets against a note with MVE.

3     122.   In the negligently failing to perform the duties of an owner of

4 MVE, Pender of PPI signed the forbearance agreement allowing Namvar, the Bank,

5 Fidelity and now FDIC and DOES 1-100 to continue causing MVE to suffer damages

6 which would have been prevented or at least substantially reduced had Namvar,

7 the Bank, Fidelity, FDIC, Pender and PPI had not secretly entered into the

8 alleged forbearance agreement for the purpose of concealing fraudulently

9 falsified documents forged by the Bank and Fidelity.

10     123.   Plaintiff is informed and believes and thereon alleges that Pender

11 condoned the negligent acts and breaches of duty of Namvar, the Bank, Fidelity

12 and now FDIC for personal gain therefore without regard to effect of the MVE

13 Bankruptcy Estate.

14     124.   The acts of Bank and now the FDIC as receiver for Bank, Fidelity,

15 Namvar, Pender, PPI and DOES 1-100, and each of them, in a bad-faith effort

16 against MVE Bankruptcy Estate concealing the actions of Namvar, the Bank and

17 Fidelity causing Bankruptcy fraud through their conduct as set forth above,

18 the MVE was directly and foreseeably injured as a result of such Bankruptcy

19 fraud.

20     125.   Plaintiff did not discover that MVE had claims to this extent for

21 Bankruptcy fraud against Bank and the FDIC as receiver for Bank, Fidelity,

22 Namvar, Pender, PPI and DOES 1-100 until less than three weeks prior to filing

23 this action.

24     126.   As a direct and proximate result of the foregoing forgery, MVE has

25 suffered actual and consequential damages according to proof.

26

27

28

## ELEVENTH CAUSE OF ACTION

### (Extrinsic Fraud)

### (Against All Defendants)

127.    Plaintiff repeats, re-alleges and incorporates by reference all of the allegations of the Complaint set forth in paragraphs 1 through 126, inclusive, above.

128.    Defendants, Namvar, the Bank, Fidelity, Pender, PPI, and the FDIC have done everything in their power to keep MVE from obtaining information about the fraud perpetrated by Namvar, the Bank and Fidelity against the MVE Bankruptcy Estate: Pender and PPI by signing a forbearance agreement agreeing to see MVE convert to a Chapter 7 Bankruptcy and not assisting Plaintiff in any negotiations to move forward with MVE project for the sake of paying its unsecured creditors, in addition to not assist MVE in pursuing litigation against Namvar, the Bank, Fidelity and the FDIC; Namvar, the Bank, and Fidelity by filling numerous adversary complaints and a Motion for Relief from Stay on certain real property to hide the fraudulent documents forged by Namvar, the Bank and Fidelity defrauding MVE Bankruptcy Estate; and the FDIC for doing everything in its power to cause this court's diversion of the truth in order to fraudulently encumber additional properties while the unsecured creditors are left with little or nothing.

129.    Namvar, the Bank, Fidelity, FDIC, Pender, and PPI actions in the MVE Bankruptcy committed extrinsic fraud in the MVE Chapter 11 and Chapter 7 Bankruptcy for self gain regarding the persons and entities associated with.

130.    In the negligently failing to perform the duties of an owner of MVE, Pender of PPI signed the forbearance agreement allowing Namvar, the Bank,

26

1  Fidelity and now FDIC and DOES 1-100 to continue causing MVE to suffer damages
2  which would have been prevented or at least substantially reduced had Namvar,
3  the Bank, Fidelity, FDIC, Pender and PPI had not secretly entered into the
4  alleged forbearance agreement for the purpose of concealing fraudulently
5  falsified documents forged by the Bank and Fidelity.

6      131.    Plaintiff is informed and believes and thereon alleges that
7  Namvar, the Bank, Fidelity, FDIC, Pender and PPI have kept MVE from obtaining
8  information about the rights of MVE to get evidence to defend against a
9  lawsuit.

10      132.    The acts of Bank and now the FDIC as receiver for Bank, Fidelity,
11  Namvar, Pender, PPI and DOES 1-100, and each of them, have caused Extrinsic
12  fraud against MVE and this court in a bad-faith effort against MVE Bankruptcy
13  Estate concealing the actions of Namvar, the Bank and Fidelity causing
14  Bankruptcy fraud through their conduct as set forth above, MVE and its
15  creditors have been directly and foreseeably injured as a result of such
16  Extrinsic fraud.

17      133.    Plaintiff did not discover that MVE had claims to this extent for
18  extrinsic fraud against the Bank and the FDIC as receiver for Bank, Fidelity,
19  Namvar, Pender, PPI and DOES 1-100 until less than three weeks prior to filing
20  this action.

21      134.    As a direct and proximate result of the foregoing, extrinsic
22  fraud, MVE has suffered actual and consequential damages according to proof.

## TWELFTH CAUSE OF ACTION

### (Intrinsic Fraud)

### (Against All Defendants)

135. Plaintiff repeats, re-alleges and incorporates by reference all of the allegations of the Complaint set forth in paragraphs 1 through 134, inclusive, above.

136. Defendants, Namvar, the Bank, Fidelity, Pender, PPI, and the FDIC have done everything in their power in representing that the additional property encumbered by the falsified documents fraudulently forged by the Bank and Fidelity are in fact true and correct documents. Therefore causing this court to rule for Defendants in previous actions.

137. Namvar, the Bank, Fidelity, FDIC, Pender, and PPI actions in the MVE Bankruptcy committed intrinsic fraud in the MVE Chapter 11 and Chapter 7 Bankruptcy for self gain regarding the persons and entities associated with.

138. In the negligently failing to perform the duties of an owner of MVE, Pender of PPI signed the forbearance agreement allowing Namvar, the Bank, Fidelity and now FDIC and DOES 1-100 to continue causing MVE to suffer damages which would have been prevented or at least substantially reduced had Namvar, the Bank, Fidelity, FDIC, Pender and PPI had not secretly entered into the alleged forbearance agreement for the purpose of concealing fraudulently falsified documents forged by the Bank and Fidelity this was intentionally miss represented to the court to gain property and standing with this court to miss lead the court in determining the truth.

139. Plaintiff is informed and believes and thereon alleges that Namvar, the Bank, Fidelity, FDIC, Pender and PPI intentionally made false representation keeping this court and MVE from finding out the truth to determine a proper ruling on various actions in the MVE Bankruptcy matters.

140.    The acts of Bank and now the FDIC as receiver for Bank, Fidelity, Namvar, Pender, PPI and DOES 1-100, and each of them, have caused Intrinsic fraud against MVE and this court in a bad-faith effort against MVE Bankruptcy Estate concealing the actions of Namvar, the Bank and Fidelity causing Bankruptcy fraud through their conduct as set forth above, MVE and its creditors have been directly and foreseeably injured as a result of such Intrinsic fraud.

141.    Plaintiff did not discover that MVE had claims to this extent for extrinsic fraud against the Bank and the FDIC as receiver for Bank, Fidelity, Namvar, Pender, PPI and DOES 1-100 until less than three weeks prior to filing this action.

142.    As a direct and proximate result of the foregoing intrensic fraud, MVE and its creditors have suffered actual and consequential damages according to proof.

<div align="center">

**THIRTEEN CAUSE OF ACTION**

**(Declaratory Relief)**

**(Against All Defendants)**

</div>

143.    Plaintiff repeats, re-alleges and incorporates by reference all of the allegations of the Complaint set forth in paragraphs 1 through 143, inclusive, above.

144.    An actual controversy has arisen between MVE, on the one hand, and Defendants on the other hand in that Plaintiff contends that (i) the Phase I loan made by Bank was intended to encumber only 25 lots and not the additional 37 lots of Phase III (or the initial Phase II loan 15 lots), (ii) the Forged Deed of Trust was, in fact, forged by Defendants in an unlawful attempt to add more collateral to secured Plaintiff's loan without Plaintiff's signature or consent, (iii) Plaintiff's Deed of Trust is a first-priority lien against the 37 lots within Phase III of the MVE project, and (iv) the Bank and FDIC have

no collateral interest in and to the 37 lots constituting Phase III of the MVE project or 25 homes which constitute Phase I (v) Pender and PPI signed a forbearance agreement prepared by Namvar, the Bank and Fidelity to keep MVE from succeeding in a Chapter 11 Bankruptcy in return the Bank would not move to collect on the 23 million dollar judgment against Pender, later the FDIC adopted the forbearance agreement and continues concealing this information for MVE and the court. For their part, Defendants contend that (i) the Phase I loan was intended to encumber the lots of Phase I and III of the MVE project, (ii) that the Forged Deed of Trust was not forged and was validly executed by Plaintiff and Pender, (iii) Plaintiff's Deed of Trust is a second-priority lien against the 37 lots within Phase III of the MVE project and (v) the Bank and FDIC have a first-priority interest in the Phase III lots.

145.   A judicial declaration specifying the rights of the respective parties is necessary.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to enter judgment against Defendants, and each of them as follows:

**On the First, Second, Third and Fourth Causes of Action**

1.   For compensatory and consequential damages in amounts to be proven at trial;

2.   For punitive damages according to proof;

**On the Fifth Cause of Action**

3.   For compensatory and consequential damages in amounts to be proven at trial;

**On the Sixth Cause of Action**

4.   For a judicial declaration determining the rights of the parties;

**On All Causes of Action**

5.   for prejudgment interest at the maximum lawful rate;

30

6.   For treble damages pursuant to Unfair Practices Act Section 17082 of the Business and Profession Code;

7.   For attorney's fees;

8.   For Plaintiffs costs of suit; and

9.   For such other relief as the Court deems just and proper.

Respectfully Submitted,

Dated: June 18, 2010                 _____

                                     Erik Benham, Pro Se

## DECLARATION OF ERIK BENHAM

I, Erik Benham Plaintiff and a creditor in the above entitled bankruptcy matter and declare as follow:

1. I have personal knowledge of the circumstance in this matter and if called to testify I could and would competently hereto.

2. Throughout the entire MVE Chapter 11 and Chapter 7 Bankruptcy Namvar, the Bank, Fidelity and the FDIC has gone to great length to hid the really truth regarding the truth behind the Deed of Trust issue in this adversary complaint.

3. Namvar, the Bank and Fidelity sought out Pender of PPI, half owner of MVE to negotiate a forbearance agreement stating that if Pender refused to sign the proposed plan of reorganization and disclosure statement so that MVE could and/or would convert to a Chapter 7 Bankruptcy; to not negotiate any deals with Erik Benham, and not to pursue the Deed of Trust issue in trade for the Bank not going after a 45 million dollar abstract of judgment against Pender to keep the court and MVE from finding out the truth. Once the FDIC took over as receivership for the Bank, the FDIC continued honoring the forbearance agreement between Namvar, the Bank, Fidelity and Pender therefore is just as guilty as all other Defendant's in this matter.

4. Ultimately the unsecured creditors have suffered by the Obstruction of Justice perpetrated on MVE regarding the all persons and entities in the actions filed in this Adversary Complaint.

5. Namvar, the Bank and Fidelity perpetrated fraud by falsifying documents fraudulently to encumber additional property of MVE. The FDIC, Pender and PPI have continued to aid and abet fraud by their actions or non actions in the MVE Bankruptcy.

6.  On behalf of all unsecured creditors, I am bringing these actions for the benefit of MVE and pray this court will examine the evidence and allegations before this honorable court.

I declare under penalty of perjury under the law of the United States of America, State of California, and County of Santa Barbara that the forgoing is true and correct.

Dated: June 18, 2010                    _____

Erik Benham, Pro Se

# EXHIBIT "1"

# PROMISSORY NOTE

**Maker:**  Maria Vista Estates        **Lender:**  Erik Benham
124 W. Main Street, Ste C              124 W. Main Street, Ste C
Santa Maria, CA  93458                 Santa Maria, CA  93458

**Principal Amount: $6,385,000.00**                    **Dated:  March 21, 2003**
**Interest Rate:  6.0%**

1.      **PROMISE TO PAY.** Maria Vista Estates, a California general partnership (hereinafter, "Maker") promises to pay to Erik Benham, an Individual ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Million Three Hundred Eighty-Five Thousand and 00/100 Dollars ($6,385,000.00) or so much as may be outstanding, together with interest as described herein on the unpaid outstanding principal balance of this Note.  Interest shall be calculated from the Interest Accrual Date (defined below) until repayment of all of the obligations evidenced by this Note.

2.      **COLLATERAL.** Maker acknowledges this Note is secured by, in addition to any other collateral, a Deed of Trust dated March 18, 2003, to Trincon, Inc., as trustee, and in favor of Lender, as beneficiary, recorded against real property located in San Luis Obispo County, State of California and known as Tract 1802, bearing Assessor Parcel Nos. 090-301-018 & 090-301-020 in the County of San Luis Obispo, State of California, excepting therefrom Lot 29 open space as defined by the Tract 1802 vested tentative map approved by the County of San Luis Obispo (the "Property").  Such Deed of Trust contains a due on sale provision.  Lender may, at his option, declare immediately due and payable all sums secured by such Deed of Trust upon the sale or transfer, without the Lender's prior written consent, of more than half of the Property's improved or unimproved buildable lots to a single third party.

    a.      <u>Junior Lien.</u>  The Deed of Trust shall be subordinate to that certain Acquisition Loan (as defined in that certain Agreement Regarding Partnership dated March 10, 2003 (the "Partnership Agreement")).

    b.      <u>Further Subordinations.</u>  The Deed of Trust may later be subordinated to that certain Development Loan (as defined in the Partnership Agreement) and may be further subordinated to any valid development and/or construction loans entered into by Maker, which loan proceeds are to be used exclusively for the development and construction of the Property, including completion of on-site and off-site improvements, or reimbursement of any partner of Maker for expenditures on the development and/or construction of the Property as permitted by the Partnership Agreement.  Lender shall cooperate by executing one or more subordination agreements required by any such lender, as provided in the Partnership Agreement.

3.      **PAYMENT.** Maker shall pay this Note in accordance with the following provisions:

    a.      <u>First Payment.</u>  Maker shall pay to Lender, concurrently with the recordation of the Deed of Trust securing repayment of this Note, the sum of One Hundred Thousand Dollars ($100,000.00).

Maker's Initials: ____ ____

b.    Second Payment. Maker shall pay to Lender, concurrently with the recordation of the lien securing Maker's repayment of the Development Loan as defined in the Partnership Agreement, the sum of Two Hundred Fifty Thousand Dollars ($250,000.00).

c.    Final Payment. No later than the Maturity Date (defined below), Maker shall pay to Lender a balloon payment representing all principal, accrued interest, fees, charges, and other sums due and owing under this Note.

c.    Manner of Payments. Maker shall pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

4.    INTEREST. From and including the Interest Accrual Date (as defined below), and continuing until this Note is paid in full, this Note shall bear interest in arrears at an annual interest rate equal to six percent per annum (6.0%), cumulative compounding. All such interest shall accrue and be added to principal. The entire unpaid balance of principal, interest, and any other charges then accrued or due but unpaid shall be due and payable pursuant to the Payment terms contained in this Note and, in any event, no later than March 18, 2004 (the "Maturity Date"). Nothing in this paragraph shall be construed, interpreted, or meant to imply that the term of this Note is more than one (1) year.

a.    Interest Accrual Date. For purposes of this Note, the Interest Accrual Date shall mean the earlier of (i) Maker's entry into that certain Development Loan as defined in the Partnership Agreement and (ii) June 18, 2003.

b.    Interest Computation. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

c.    Usury. It is the intention of Maker and Lender in the execution of this Note, the Partnership Agreement, and the Deed of Trust to contract in strict compliance with the usury laws of the State of California governing the loan evidenced by this Note. In furtherance thereof, Maker and Lender stipulate and agree that none of the terms and provisions contained in this Note, the Partnership Agreement, and the Deed of Trust shall ever be construed to create a contract for the use, forbearance or detention of money requiring payment of interest at a rate in excess of the maximum interest rate permitted to be charged by the laws of the State of California in connection with this transaction. Maker shall never be required to pay interest on this Note at a rate in excess of the maximum interest that may be lawfully charged under the laws of the State of California, and the provisions of this paragraph shall control over all other provisions contained in this Note, the Partnership Agreement, and the Deed of Trust that may be actual or apparent conflict herewith. In the event Lender shall collect monies which are deemed to constitute interest which would otherwise increase the effective interest rate on this Note to a rate in excess of that permitted to be charged by the laws of the State of California, all such sums deemed to constitute interest in excess of the maximum rate shall, at Lender's sole option, be credited to the payment of principal or returned to Maker. The parties acknowledge that this Note has been made or arranged by Helen Silva, a real estate broker licensed by the California

2                    Maker's Initials:

Department of Real Estate (License No. 01205689) and is secured by real property and, as such, is exempt from any and all usury laws.

5.    **LOAN FEE.** Maker and Lender agree that there shall be no loan fee charged by Lender in conjunction with this Note.

6.    **PREPAYMENT.** This Note may be prepaid in whole or in part at any time. Any prepayment in whole shall include principal, interest, and any other amounts outstanding on the Note. There shall be no prepayment penalty. Partial prepayments shall be applied first to the payment of interest accrued but unpaid on the outstanding principal balance of this Note and the residue thereof, if any, shall be applied first to any unpaid late charges and then principal. No prepayment shall postpone or affect the due date or the amount of any subsequent installments due under this Note.

7.    **DEFAULT.** Maker shall be in default if any of the following happens: (a) Maker fails to make any payment when due; (b) Maker fails to arrange for the Development Loan (as defined below) by September 6, 2003, (c) Maker completes, without the Lender's prior written consent, the bulk sale of more than half of the Property's improved or unimproved buildable lots to a single third party, (d) Maker breaks any promise Maker has made to Lender, or Maker fails to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note, the Partnership Agreement, or the Deed of Trust, (e) Maker defaults under any senior or junior loan, extension of credit, promissory note in favor of any other creditor or person that may materially affect the Property or Maker's ability to repay this Note or perform Maker's obligations under this Note, the Partnership Agreement, or the Deed of Trust, (f) Maker dissolves (regardless of whether election to continue is made), (g) Maker, or any one of the individuals or entities who comprise Maker, becomes insolvent, a receiver is appointed for any part of Maker's property, Maker makes an assignment for the benefit of creditors, or any proceeding is commenced either by Maker or against Maker under any bankruptcy or insolvency laws; and (h) any creditor tries to take any of Maker's property on or in which Lender has a lien or security interest.

8.    **LENDER'S RIGHTS.** Upon default, Lender may, in addition to exercising all rights and remedies available to it at law or in equity, in addition to the remedies available to it hereunder, or under the Partnership Agreement or the Deed of Trust securing this Note, declare the entire unpaid principal balance on this Note, all accrued unpaid interest, and all other amounts which Maker owes to Lender pursuant to this Note immediately due, without notice, and then Maker shall pay that amount. Lender may hire or pay someone else to help collect this Note if Maker does not pay. Maker also shall pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Maker also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the State of California. If there is a lawsuit, Maker and Lender agree that the proper jurisdiction and venue of any such lawsuit shall be the courts of San Luis Obispo County, State of California. This Note shall be governed by and construed in accordance with the internal laws of the State of California.

9.    **NOTICE OF BALLOON PAYMENTS. THIS PROMISSORY NOTE IS PAYABLE IN FULL, NO LATER THAN THE MATURITY DATE — AND ALSO REQUIRES MAKER TO MAKE INTERIM BALLOON PAYMENTS DESCRIBED ABOVE (IDENTIFIED**

3                    Maker's Initials: _____  _____

AS FIRST PAYMENT AND SECOND PAYMENT) -- AT WHICH TIME THE ENTIRE
PRINCIPAL BALANCE OF THIS PROMISSORY NOTE, ANY INTEREST THEN DUE, AND
ANY ADVANCES MADE MUST BE PAID IN FULL. THE SCHEDULE OF PAYMENTS
LISTED HEREIN CONTEMPLATE THAT ONE OR MORE BALLOON PAYMENTS ARE AND
WILL BECOME DUE. LENDER OR ITS ASSIGNS, ARE NOT OBLIGATED TO REFINANCE
THE LOAN EVIDENCED BY THIS NOTE AT ANY TIME, INCLUDING ON THE MATURITY
DATE. ON THE MATURITY DATE, REFINANCING OF THIS PROMISSORY NOTE MAY BE
REQUIRED AND THE PREVAILING INTEREST RATE MAY BE CONSIDERABLY HIGHER
THAN THE RATE UNDER THIS NOTE. YOU MAY BE REQUIRED TO PAY ADDITIONAL
LOAN FEES AND COSTS UPON REFINANCE. THIS NOTE IS NOT SUBJECT TO SECTIONS
2924i OR 2966 OF THE CALIFORNIA CIVIL CODE.

10.    **NON-RECOURSE NOTE.** This Note constitutes a promissory note made by Maker
in favor of Lender, which obligations are secured by certain Deed of Trust made in favor of Lender.
Lender's recourse against Maker for default under this Note shall be limited to foreclosure of its
Deed of Trust. Lender shall have no further recourse against Maker or any of its general partners.

11.    **GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights
or remedies under this Note without losing them. Maker and any other person who signs or endorses
this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment,
demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and
unless otherwise expressly stated in writing, no party who signs this Note, whether as maker,
accommodation maker or endorser, shall be released from liability. All such parties agree that
Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or
collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and
take any other action deemed necessary by Lender without the consent of or notice to anyone. All
such parties also agree that Lender may modify this loan without the consent of or notice to anyone

[The remainder of this page is left blank intentionally.]

4    Maker's Initials:

other than the party with whom the modification is made.  All other modifications affecting the terms of this Note shall be made in a writing signed by Lender, or its assign, and Maker.

**PRIOR TO SIGNING THIS NOTE, MAKER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  MAKER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.**

MAKER:

**MARIA VISTA ESTATES,
a California general partnership**

By    Pender Properties, Inc.,
      a California corporation, General Partner

By_____
      Mark Pender, President

By    BenIng Company, LLC,
      a California limited liability company,
      General Partner

By_____
      Erik Benham, President

5          Maker's Initials: _____

# EXHIBIT "2"

JULIE RODEWALD                                          SR
San Luis Obispo County -- Clerk/Recorder               4/18/2003
Recorded at the request of                             8:00 AM
Fidelity Title Company

RECORDATION REQUESTED BY:

Fidelity National Title Company
ACCOMMODATION

DOC#:    2003040009        Titles: 3   Pages:   13

                           Fees       57.00
                           Taxes       0.00
WHEN RECORDED MAIL TO:      Others      0.00
                           PAID      $57.00

Ogden & Fricks LLP
656 Santa Rosa Street, Second Floor
San Luis Obispo, CA  93401

_____FOR RECORDER'S USE ONLY_____

# DEED OF TRUST, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

THIS DEED OF TRUST IS DATED March 18, 2003, by and among Maria Vista Estates, a California general partnership, whose address is 124 W. Main Street, Suite C, Santa Maria, CA  93458 ("Trustor"); Erik Benham, an individual, whose address is 124 W. Main Street, Suite C, Santa Maria, CA  93458 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Trincon, Inc., whose address is 124 W. Main Street, Suite C, Santa Maria, CA  93458 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in San Luis Obispo County, State of California (the "Real Property"):

Tract 1802 of the County of San Luis Obispo bearing Assessor's Parcel Numbers 090-301-018 & 090-301-020, excepting therefrom Lot 29 open space as defined by the Tract 1802 vested tentative map approved by the County and more particularly described in Exhibit "A" attached hereto and made a part hereof.

The Real Property or its address is commonly known as Tract 1802.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938.  In addition, Trustor grants Lender a Uniform Commercial Code security interest in the Rents and the Personal Property defined below.

Definitions.  The following words shall have the following meanings when used in this Deed of Trust.  Terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code.  All references to dollar amounts shall mean amounts in lawful money of the United States of America.

| | |
|---|---|
| Beneficiary | "Beneficiary" means Erik Benham, his heirs, successors, and assigns. |
| Deed of Trust | "Deed of Trust" means this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents. |
| Improvements | "Improvements" means and includes without limitation all existing and future improvements, (including onsite infrastructure improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property. |

| | |
|---|---|
| Indebtedness | "Indebtedness" means all principal and interest payable under the Note, any and all other advances made or loans extended to Trustor by Lender secured in whole or in part by the Property, and any amounts expended or advanced by Lender to discharge obligations of Trustor or expenses incurred by Trustee or Lender to enforce obligations of Trustor under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust. |
| Lender | "Lender" means Erik Benham, his heirs, successors, and assigns. |
| Note | "Note" means that certain Promissory Note dated March 18, 2003, in the principal amount of $6,385,000.00 made by Trustor in favor of Lender, together with all renewals, extensions, modifications, refinancings, and substitutions for the Note. |
| Personal Property | "Personal Property" means all fixtures now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property. |
| Property | "Property" means collectively the Real Property and the Personal Property. |
| Real Property | "Real Property" means the property, interests and rights described above in the "Conveyance and Grant" section. |
| Rents | "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits and other benefits derived from the Property together with the cash proceeds of the Rents. Without limiting the generality of the foregoing, "Rents" shall include all fees, charges, accounts or other payments for use of the Property. |
| Trustee | "Trustee" means Tincon, Inc. and any substitute or successor trustees. |
| Trustor | "Trustor" means any and all persons and entities executing this Deed of Trust, including without limitation all Trustors named above. |

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF TRUSTOR UNDER THE NOTE AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

1.      **Payment And Performance.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note and this Deed of Trust.

2.      **Possession And Maintenance Of The Property.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

   a.      Possession and Use. Until the occurrence of an Event of Default (as defined herein), Trustor may (a) remain in possession and control of the Property, (b) use, operate or manage the Property, and (c) collect any Rents from the Property.

   b.      Duty to Maintain. Trustor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

   c.      Nuisance, Waste. Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

   d.      Removal of Improvements. Trustor shall not demolish or remove any Improvements from the Real Property without the prior written consent of Lender. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

   e.      Lender's Right to Enter. Lender and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

   f.      Compliance with Governmental Requirements. Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act

2

Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

    g.    **Duty to Protect.** Trustor agrees neither to abandon nor leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

3.    **Due On Sale - Consent By Lender.** Lender may, at its option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without the Lender's prior written consent, of more than half of the Properties' improved or unimproved buildable lots to a single third party. A "sale or transfer" means the conveyance of the Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, agreement for management of the Real Property by a third party, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of a real property interest.

4.    **Taxes And Liens.** The following provisions relating to the taxes and liens on the Property are a part of this Deed of Trust.

    a.    **Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Except where specifically authorized by Lender in writing, Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

    b.    **Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

5.    **Property Damage Insurance.** Trustor shall be required to ensure that all contractors providing services to the Property carry course of construction insurance naming Trustor and Beneficiary as additional insureds.

6.    **Expenditures By Lender.** If Trustor fails to comply with any provision of this Deed of Trust, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Trustor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

7.    **Warranty; Defense of Title.** The following provisions relating to ownership of the Property are a part of this Deed of Trust.

    a.    **Title.** Trustor warrants that Trustor and its General Partners have the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

    b.    **Defense of Title.** Subject to the exceptions in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party

in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

c.   **Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

8.   **Condemnation.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust.

a.   **Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

b.   **Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments as may be requested by it from time to time to permit such participation.

9.   **Imposition Of Taxes, Fees And Charges By Governmental Authorities.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

a.   **Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

b.   **Taxes.** The following shall constitute taxes to which this section applies: (i) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (ii) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (iii) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (iv) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor (except for taxes owed by Lender upon receipt of payment of the Indebtedness).

c.   **Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default (as defined below), and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (a) pays the tax before it becomes delinquent, or (b) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

10.   **Security Agreement; Financing Statements.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

a.   **Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

b.   **Security Interest.** Upon request by Lender, Trustor shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall assemble the Personal Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

c.    **Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

11.    **Further Assurances; Attorney-in-Fact.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust.

a.    **Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, re-filed, or re-recorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Trustor under the Note and this Deed of Trust, and (b) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or agreed to the contrary by Lender in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

b.    **Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

12.    **Full Performance.** If Trustor pays all the Indebtedness when due and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property.

13.    **Default.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Deed of Trust:

a.    **Default on Indebtedness.** Failure of Trustor to make any payment when due on the Indebtedness.

b.    **Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, any other payment necessary to prevent filing of or to effect discharge of any lien, or upon any indebtedness secured by a senior or junior lien recorded against the Real Property.

c.    **Default in Favor of Third Parties.** Should Borrower or any Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's or any Trustor's ability to repay the loans or perform their respective obligations under this Deed of Trust.

d.    **Compliance Default.** Failure of Trustor to comply with any other term, obligation, covenant or condition contained in this Deed of Trust or the Note. Should Lender declare an Event of Default under this subsection, Lender shall provide written notice describing each such Event of Default to each general partner of Trustor. Trustor shall have ten (10) days to cure such default. Should Trustor fail to do so, Lender may enforce each and every term of this Deed of Trust as permitted herein.

e.    **Defective Collateralization.** This Deed of Trust ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time due to the acts or omissions of Trustor.

f.    **Death or Insolvency.** The dissolution (regardless of whether election to continue is made) of Trustor or any other's termination of Trustor's existence as a going business, the insolvence of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor or its general partner. Lender Properties, Inc. Such bankruptcy shall not be deemed a default under this Deed of Trust if such bankruptcy is dismissed within sixty (60) days of the date on which the voluntary or involuntary petition is filed.

g.    **Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any

governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forfeiture proceeding, provided that Trustor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

   h.   **Failure to obtain Development Loan.** Trustor fails to arrange for the Development Loan as required by, and defined in, that certain Agreement Regarding Partnership dated March 10, 2003 (the "Partnership Agreement") by September 6, 2003.

   i.   **Bulk Sale of Lots.** Trustor sells, without Lender's prior written consent, more than half of the Property's improved or unimproved buildable lots to a single third party.

   j.   **Breach of Other Obligation.** Trustor breaks any promise Trustor has made to Lender, or Trustor fails to comply with or to perform when due any other term, obligation, covenant, or condition contained in the Note or the Partnership Agreement.

14.   **Rights And Remedies On Default.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

   a.   **Foreclosure By Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of a written declaration of default and demand for sale and of a written notice of default and election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

   b.   **Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right, in lieu of foreclosure by power of sale, to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law. Notwithstanding the foregoing, Lender shall have no right to a deficiency judgment against Trustor, its general partners, or any of them.

   c.   **UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

   d.   **Collect Rents.** Lender shall have the right, without notice to Trustor, to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants, guests, patrons or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

   e.   **Appointment Of A Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to

operate the Property preceding foreclosure or sale, and to collect the rents, profits and proceeds from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

f.   **Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

g.   **Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least five (5) days before the time of the sale or disposition. Any sale of Personal Property may be made in conjunction with any sale of the Real Property.

h.   **Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshaled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

i.   **Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Deed of Trust shall not constitute a waiver of or otherwise prejudice the party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Lender to pursue any remedy provided in this Deed of Trust, the Note, or provided by law shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust after failure of Trustor to perform shall not affect Lender's right to declare a default and to exercise any of its remedies.

j.   **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any post-judgment collection services, the costs of searching records, obtaining title reports (including foreclosure reports and Trustee's Sale Guarantee policies), surveyor's reports, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

k.   **Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

15. **Powers And Obligations of Trustee.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

a.   **Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

b.   **Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

c.   **Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

d.   **Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of San Luis Obispo County, California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and

7

Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

16.   **Notices To Trustor And Other Parties.** Any notice under this Deed of Trust shall be in writing, may be sent by facsimile (unless otherwise required by law), and shall be effective when actually delivered, or when deposited with a nationally recognized overnight courier, or, if mailed, shall be deemed effective when deposited in the United States mail first class, certified or registered mail, postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. For notice purposes, Trustor agrees to keep Lender and Trustee informed at all times of Trustor's current address. Each Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust.

17.   **Statement Of Obligation.** Not Applicable.

18.   **MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

   a.   **Amendments.** This Deed of Trust constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

   b.   **Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

   c.   **Applicable Law.** This Deed of Trust has been delivered to Lender and accepted by Lender in the State of California. This Deed of Trust shall be governed by and construed in accordance with the internal laws of the State of California.

   d.   **Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

   e.   **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender or any affiliate of Lender in any capacity, without the written consent of Lender.

   f.   **Multiple Parties.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each of the persons signing below is responsible for all obligations in this Deed of Trust.

   g.   **Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Deed of Trust in all other respects shall remain valid and enforceable.

   h.   **Successors and Assigns.** Subject to the limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

   i.   Time is of the Essence. Time is of the essence in the performance of this Deed of Trust.

   j.   **Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of

any of Lender's rights or any of Trustor's obligations as to any future transactions. Whenever consent by Lender is required in this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST AND AGREES TO ITS TERMS.

MARIA VISTA ESTATES,
a California general partnership


By      Pender Properties, Inc.,
        a California corporation, General Partner


        By _____
             Mark Pender   President


By      Bening Company, LLC,
        a California limited liability company,
        General Partner


        By _____
             Erik Benham   President

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of _California_

County of _Santa Barbara_

On _April 8, 2003_ before me, _Andrew C. Gilbert_
personally appeared _Mark Powers_

☐ personally known to me – OR – ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

ANDREW C. GILBERT
COMM. # 1294369
NOTARY PUBLIC-CALIFORNIA
SANTA BARBARA COUNTY
COMM. EXP. FEB. 17, 2005

WITNESS my hand and official seal.

_____
Signature of Notary Public

---------- **OPTIONAL** ----------

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____     Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____

☐ Individual
☐ Corporate Officer
　　Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing:

Signer's Name: _____

☐ Individual
☐ Corporate Officer
　　Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing:

STATE OF   California

COUNTY OF   San Luis Obispo

On   April 8, 2003 _____ before me,  I. Cravath _____
                                           (Name, Title of Officer)

personally appeared  Erik Benham _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
(Signature of Notary Public)

(This area for notarial seal)

Government Code 27361.7

I certify under the penalty of perjury, that the notary seal on
the document to which this statement is attached reads as
follows:

Name of Notary:    N. Urquhart

Name of County:    San Luis Obispo

Date Commission Expires:    12-18-04

Commission Number:    12 5759

Signature _____
                    Fidelity National Company

Date    4/19/0?

San Luis Obispo, California

Lot 1 and the remainder Lot of Tract No. 1802-1, in the un-incorporated area of the County of San Luis Obispo, State of California, according to map recorded June 19, 2002 in Book 20, Page 17 of Maps in the office of the County Recorder of said County.

Assessor's Parcel No: 090-301-061, 062, 063

# EXHIBIT "3"

# CONSTRUCTION LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $15,800,000.00 | 12-28-2004 | 12-28-2005 | | | | | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  Maria Vista Estates, a California General
Partnership
124 South Main Street, Suite C
Santa Monica, CA 93454

**Lender:**  SECURITY PACIFIC BANK
848 N. EUCLID AVENUE
ONTARIO, CA 91762

THIS CONSTRUCTION LOAN AGREEMENT dated December 28, 2004, is made and executed between **Maria Vista Estates, a California General Partnership** ("Borrower") and **SECURITY PACIFIC BANK** ("Lender") on the following terms and conditions. Borrower has applied to Lender for one or more loans (collectively "Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of December 28, 2004, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**ADVANCE AUTHORITY.** The following persons currently are authorized to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of their authority: **Mark Pender, President of Pender Properties, Inc.; and Mark Bertram, President of Tritton, Inc.**

**LOAN.** The Loan shall be in an amount not to exceed the principal sum of **U.S. $15,800,000.00** and shall bear interest as of much of the principal sum as shall be advanced pursuant to the terms of this Agreement and the Related Documents. The Loan shall bear interest on each Advance from the date of the Advance in accordance with the terms of the Note. Borrower shall use the Loan Funds solely for the payment of: (A) the costs of constructing the improvements and equipping the Project in accordance with the Construction Contract; (B) other costs and expenses incurred or to be incurred in connection with the construction of the Improvements as shown in the sole discretion shall approve; and (C) if permitted by Lender, interest due under the Note, including all expenses and all loan and commitment fees described in this Agreement. The Loan amount shall be subject, at all times, to all maximum limits and conditions set forth in this Agreement or in any of the Related Documents, including without limitation, any limits relating to overruns and Project costs.

**PROJECT DESCRIPTION.** The word "Project" as used in this Agreement means the construction and completion of all improvements contemplated by this Agreement, including without limitation the erection of the building or structure on the Real Property identified to this Agreement by Borrower and Lender. Installation of equipment and fixtures, landscaping, and all other work necessary to make the Project usable and complete for the intended purposes. The Project includes the following work:

Construct 26 production homes and 92 finished lots (Maria Vista Estates) in Nipomo, California.

**REAL PROPERTY DESCRIPTION.** The word "Property" as used in this Agreement means the Real Property together with all improvements, all equipment, fixtures, and other articles of personal property now or subsequently attached or affixed to the Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for any of such property; and all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of such property. The real estate described below constitutes the Real Property as used in the Agreement.

The real estate legally described as:
Lot 1 and the "Remainder" of Tract 1656, Phase 1 in the unincorporated area of the County of San Luis Obispo, State of California according to map recorded May 20, 2003 in Book 24, Page 3 of Maps in the Office of the County Recorder of said County.

The real estate or its address is commonly known as:
its address is commonly known as:

**FEES AND EXPENSES.** Whether or not the Project shall be completed, Borrower shall assume and pay upon demand all out-of-pocket expenses incurred by Lender in connection with the preparation of loan documents and the making of the Loan, including without limitation the following: closing costs, title fees, and disbursements; (B) all expenses of Lender's legal counsel; and (C) all the examination fees, title insurance premiums, appraisal fees, survey costs, recording fees, and filing and recording fees.

**NO CONSTRUCTION PRIOR TO RECORDING OF SECURITY DOCUMENT.** Borrower will not permit any work or materials to be furnished in connection with the Project until: (A) Borrower has signed the Related Documents; (B) Lender's mortgage or deed of trust and other Security interests in the Property have been duly recorded and perfected; (C) Lender has been provided evidence, satisfactory to Lender, that Borrower has obtained all insurance required under this Agreement and any Related Documents and that Lender's liens on the Property and Improvements are valid and perfected first liens, subject only to such exceptions, if any, acceptable to Lender.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a partnership which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 124 South Main Street, Suite C, Santa Monica, CA 93454. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's principal office address or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business:

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

Page 2

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**Title to Property.** Borrower has, or on the date of first disbursement of Loan proceeds will have, good and marketable title to the Collateral free and clear of all defects, liens, and encumbrances, excepting only liens for taxes, assessments, or governmental charges or levies not yet delinquent or payable without penalty or interest, and such liens and encumbrances as may be approved in writing by the Lender. The Collateral is contiguous to publicly dedicated streets, roads, or highways providing access to the Collateral.

**Project Costs.** The total cost for the Project shall not exceed $9,627,500.00. The Project costs are true and accurate estimates of the costs necessary to complete the improvements in a good and workmanlike manner according to the Plans and Specifications presented by Borrower to Lender, and Borrower shall take all steps necessary to prevent the actual cost of the improvements from exceeding the Project costs.

**Utility Services.** All utility services appropriate to the use of the Project after completion of construction are available at the boundaries of the Collateral.

**Assessment of Property.** The Collateral is and will continue to be assessed and taxed as an independent parcel or taxed as an independent parcel by all governmental authorities.

**Compliance with Governing Authorities.** Borrower has examined and is familiar with all the assessments, covenants, conditions, restrictions, reservations, building laws, regulations, zoning ordinances, and federal, state, and local requirements affecting the Project. The Project will at all times and in all respects conform to and comply with the requirements of such easements, covenants, conditions, restrictions, reservations, building laws, regulations, zoning ordinances, and federal, state, and local requirements.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Approval of Contractors, Subcontractors, and Materialmen.** Lender shall have approved a list of all contractors employed in connection with the construction of the Improvements, showing the name, address, and telephone number of each contractor, a general description of the nature of the work to be done, the labor and material payment bonds (if required) and the approximate dollar value of the labor, work, or materials with respect to each contractor or materialman. Lender shall have the right to communicate with any person to verify the facts disclosed by this list or by any application for any Advance for any other purpose.

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

Page 3

**Plans, Specifications, and Permits.** Lender shall have received and accepted a complete set of written Plans and Specifications setting forth all improvements for the Project, and Borrower shall have furnished to Lender copies of all permits and requisite approvals of any governmental body necessary for the construction and use of the Project.

**Architect's and Construction Contracts.** Borrower shall have furnished in form and substance satisfactory to Lender an executed copy of the Architect's Contract and an executed copy of the Construction Contract.

**Related and Support Documents.** Borrower shall provide to Lender the following support documents for the Loan: Assignment of Architect's Contract; Assignment of Construction Contract and Completion Guaranty.

**Budget and Schedule of Estimated Advances.** Lender shall have provided to Lender approved detailed budget and cash flow projections of total Project costs and a schedule of the estimated amount and time of disbursements of each Advance.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender property certified resolutions, duly authorizing the execution of the Project and the Related Documents, the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, in their sole discretion, may require.

**Bond.** If requested by Lender, Borrower shall have furnished a performance and payment bond in an amount equal to 100% of the amount of the Construction Contract, as well as a materialmen's and mechanics' payment bond, with such riders and supplements as Lender may require, each in form and substance satisfactory to Lender, naming the General Contractor as principal and Lender as an additional obligee. Any required bond and the contents which they cover must be duly recorded or filed in accordance with California Civil Code Section 3235, if required by Lender.

**Appraisal.** If required by Lender, an appraisal shall be prepared for the Property, at Borrower's expense, which in form and substance shall be satisfactory to Lender, in Lender's sole discretion, including applicable regulatory requirements.

**Plans and Specifications.** If requested by Lender, Borrower shall have assigned to Lender on Lender's forms the Plans and Specifications for the Project.

**Environmental Report.** If requested by Lender, Borrower shall have furnished to Lender at Borrower's expense, an environmental report and certificate on the Property in form and substance satisfactory to Lender, prepared by an engineer or other expert satisfactory to Lender stating that the Property complies with all applicable provisions and requirements of the "Hazardous Substances" paragraph set forth in this Agreement.

**Soil Report.** If requested by Lender, Borrower shall have furnished to Lender, at Borrower's expense, a soil report for the Property in form and substance satisfactory to Lender, prepared by a registered engineer satisfactory to Lender stating that the Property is free from all soil or other geological conditions that would preclude its use or development as contemplated without extra expense for precautionary, corrective or remedial measures.

**Survey.** If requested by Lender, Borrower shall have furnished to Lender a survey of recent date, prepared and certified by a qualified surveyor and showing that the improvements constructed in accordance with the Plans and Specifications shall be wholly within the boundaries of the Collateral without encroachment or violation of any zoning ordinances, building codes or regulation, or setback requirements, together with such other information as Lender in its sole discretion may require.

**Zoning.** Borrower shall have furnished evidence satisfactory to Lender that the Collateral is duly and validly zoned for the construction, maintenance, and operation of the Project.

**Title Insurance.** Borrower shall have provided to Lender an ALTA Lender's extended coverage policy of title insurance with such endorsements as Lender may require, issued by a title insurance company acceptable to Lender and in a form, amount, and content satisfactory to Lender, insuring or agreeing to insure that Lender's security document on the Property is or will be upon recordation a valid first lien on the Property free and clear of all defects, liens, encumbrances, and exceptions except those as specifically accepted by Lender in writing. If requested by Lender, Borrower shall provide to Lender, in form and substance satisfactory to Lender, a title insurance policy (or its equivalent) to the title policy upon the completion of each function to the Improvements showing no encroachments, and upon completion an endorsement which insures the lien-free completion of the Improvements (CLTA 101 series, as required by Lender). Specifically, Borrower shall provide to Lender the following title insurance endorsements: 100; 101.5; 116.

**Insurance.** Unless waived by Lender in writing, Borrower shall have delivered to Lender the following insurance policies or evidence thereof: (a) an all risks course of construction insurance policy (builder's risk), with extended coverage covering the improvements issued in an amount and by a company acceptable to Lender, containing a loss payable or other endorsement satisfactory to Lender insuring Lender as mortgagee, together with such other endorsements as may be required by Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender; (b) owners and General Contractor general liability insurance, public liability and workmen's compensation insurance, (c) flood insurance if required by Lender or applicable law; and (d) all other insurance required by this Agreement or by the Related Documents.

**Workers' Compensation Coverage.** Provide to Lender proof of the General Contractor's compliance with all applicable workers' compensation laws and regulations with regard to all work performed on the Project.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Satisfactory Construction.** All work usually done at the stage of construction for which disbursement is requested shall have been done in a good and workmanlike manner and all materials and fixtures usually furnished and installed at that stage of construction shall have been furnished and installed, all in compliance with the Plans and Specifications. Borrower shall also have furnished to Lender such proofs as Lender may require to establish the progress of the work, compliance with applicable laws, freedom of the Property from liens, and the basis for the requested disbursement.

**Certification.** Borrower shall have furnished to Lender a certification by an engineer, architect, or other qualified inspector acceptable to Lender stating that the construction of the improvements has complied and will continue to comply with all applicable statutes, ordinances, codes, regulations, and similar requirements.

**Lien Waivers.** Borrower shall have obtained and attached to each application for an Advance, including the Advance to cover final payment to the General Contractor, executed acknowledgments of payments of all sums due and release of mechanic's and materialmen's liens satisfactory to Lender, from any party having lien rights, which acknowledgments of payment and release of liens shall cover all work, labor, equipment, materials done, supplied, performed, or furnished prior to such application for an Advance.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

Page 4

**DISBURSEMENT OF LOAN FUNDS.** The following provisions relate to the disbursement of funds from the Loan Fund.

**Application for Advances.** Each application shall be based on a standard AIA payment request form or other form approved by Lender, executed by Borrower and supported by such evidence as Lender shall reasonably require. Borrower shall apply only for disbursement with respect to work actually done by the General Contractor and for materials and equipment actually incorporated into the Project. Each application for an Advance shall be deemed a certification of Borrower that as of the date of such application, all representations and warranties contained in this Agreement are true and correct, and that Borrower is in compliance with all of the provisions of this Agreement.

**Payments.** At the sole option of Lender, Advances may be paid in the joint names of Borrower and the General Contractor, subcontractor(s), or supplier(s) in payment of sums due under the Construction Contract. At its sole option, Lender may directly pay the General Contractor and any subcontractors and other parties the sums due under the Construction Contract. Borrower appoints Lender as its attorney-in-fact to make such payments. This power shall be deemed coupled with an interest, shall be irrevocable, and shall survive an Event of Default under this Agreement.

**Projected Cost Overruns.** If Lender at any time determines in its sole discretion that the amount in the Loan Fund is insufficient, or will be insufficient, to complete fully and to pay for the Project, then within ten (10) days after receipt of a written request from Lender, Borrower shall deposit in the Loan Fund an amount equal to the deficiency as determined by Lender. The judgment and determination of Lender under this section shall be final and conclusive. Any such amounts deposited by Borrower shall be disbursed prior to any Loan proceeds.

**Final Payment to General Contractor.** Upon completion of the Project and fulfillment of the Construction Contract to the satisfaction of Lender and provided sufficient Loan Funds are available, Lender shall make an Advance to cover the final payment due to the General Contractor upon delivery to Lender of endorsements to the ALTA title insurance policy following the posting of the completion notice, as provided under applicable law. Construction shall not be deemed complete for purposes of final disbursement unless and until Lender shall have received all of the following:

(1) Evidence satisfactory to Lender that all work under the Construction Contract requiring inspection by any governmental authority with jurisdiction has been duly inspected and approved by such authority, that a certificate of occupancy has been issued, and that all parties performing work have been paid or will be paid for such work;

(2) A certification by an engineer, architect, or other qualified inspector acceptable to Lender that the Improvements have been completed substantially in accordance with the Plans and Specifications and the Construction Contract, that direct connection has been made to all utilities set forth in the Plans and Specifications, and that the Project is ready for occupancy; and

(3) Acceptance of the completed Improvements by Lender and Borrower.

**Construction Default.** If Borrower fails in any respect to comply with the provisions of this Agreement or if construction ceases before completion regardless of the reason, Lender, at its option, may refuse to make further Advances, may accelerate the indebtedness under the terms of the Related Documents, and without impairing any of its rights, powers, or privileges, may enter into possession of the construction site and perform or cause to be performed any and all work and labor necessary to complete the Improvements, substantially in accordance with the Plans and Specifications.

**Damage or Destruction.** If any of the Collateral or Improvements is damaged or destroyed by casualty of any nature, within sixty (60) days thereafter Borrower shall restore the Collateral or Improvements to the condition in which they were before such damage or destruction with funds other than those in the Loan Fund. Lender shall not be obligated to make disbursements under this Agreement until such restoration has been accomplished.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default has occurred.

**LIMITATION ON RESPONSIBILITY.** The making of any Advance by Lender shall not constitute or be interpreted as either (A) an approval or acceptance by Lender of the work done through the date of the Advance, or (B) a representation or indemnity by Lender to any party against any deficiency or defect in the work or against any breach of any contract. Inspections and approvals of the Plans and Specifications, the Improvements, the workmanship and materials used in the Improvements, and the inspection, determination of, or non-compliance of the Project with any and all standards are for the sole protection of Lender's interests, and under no circumstances shall they be construed to impose any responsibility or liability of any nature whatsoever on Lender to any party. Neither Borrower nor any contractor, subcontractor, materialman, laborer, or other person shall rely, or have any right to rely, upon Lender's determination of the appropriateness of any Advance. No disbursement or approval of any Advance shall constitute a representation by Lender as to the nature of the Project, its construction, or its intended use for Borrower or for any other person, nor shall it constitute an indemnity by Lender to Borrower or to any other person against any deficiency or defects in the Project or against any breach of any contract.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

**Additional Information.** Furnish such additional information and statements, lists of assets and liabilities, agings of receivables and payables, inventory schedules, budgets, forecasts, tax returns, and other reports with respect to Borrower's financial condition and business operations as Lender may request from time to time.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other agreements.

**Insurance.** Maintain fire and other risk insurance, hail, hazard and crop insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current property value on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guarantee.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| Erick Bartham | Unlimited |
| Mark Handler | Unlimited |

**Loan Fees, Charges and Expenses.** Whether or not the Project is completed, Borrower also shall pay upon demand all out-of-pocket expenses incurred by Lender in connection with the preparation of loan documents and the making of the Loan, including, without limitation, all closing costs, fees, and disbursements, all expenses of Lender's legal counsel, and all title examination fees, title insurance premiums, appraisal fees, survey costs, required fees, and filing and recording fees.

**Loan Proceeds.** Use the Loan Funds solely for payment of bills and expenses directly related to the Project.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including, without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificate.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Construction of the Project.** Commence construction of the Project no later than January 9, 2005, and cause the Improvements to be constructed and equipped in a diligent and orderly manner and in strict accordance with the Plans and Specifications approved by Lender, the Construction Contract, and all applicable laws, ordinances, codes, regulations, and rights of adjoining or concurrent property owners. Borrower agrees to complete the Project for purposes of final payment to the General Contractor on or before December 9, 2005, regardless of the reason for any delay.

**Defaults.** Upon demand of Lender, promptly correct any defect in the Improvements or any departure from the Plans and Specifications not approved by Lender in writing before further work shall be done upon the portion of the Improvements affected.

**Project Claims and Litigation.** Promptly inform Lender of (1) all material adverse changes in the financial condition of the General Contractor; (2) any litigation and claims, actual or threatened, affecting the Project or the General Contractor, which could materially affect the successful completion of the Project or the ability of the General Contractor to complete the Project as agreed; and (3) any condition or event which constitutes a breach or default under any of the Related Documents or any contract related to the Project.

**Payment of Claims and Removal of Liens.** (1) Cause all claims for labor done and materials and services furnished in connection with the Improvements to be fully paid and discharged in a timely manner, (2) diligently file or procure the filing of a valid notice of completion of the Improvements, or such comparable document as may be permitted under applicable lien laws, (3) diligently file or procure the filing of a notice of cessation, or such comparable document as may be permitted under applicable lien laws, upon the happening of cessation of labor on the Improvements for a continuous period of thirty (30) days or more, and (4) take all reasonable steps necessary to remove all claims of liens against the Improvements, or any part of the Collateral or improvements, or any rights or interests appurtenant thereto, (5) upon request of Lender, make such demands or claims upon or against laborers, materialmen, subcontractors, or other persons who have furnished or claim to have furnished labor, services or materials in connection with the Improvements, which demands or claims shall under the laws of the State of California require diligent assertion; and (6) upon Lender's request, Borrower record or cause the General Contractor to record a valid notice of cessation of labor, or valid notice. Should Borrower fail to discharge or contest and cause to be released any such claim of lien or claim, then within fifteen (15) days after the filing of any claim of lien that is disputed or contested by Borrower, record or cause to be released a surety bond in an amount sufficient to release the claim of lien, within five (5) days of Lender's demand, make suitable provision for deposit of funds with Lender in an amount sufficient to satisfactory to Lender or by title insurance the possibility that the contest will be unsuccessful. If Borrower fails to remove any lien on the Collateral or improvements or provide a bond or deposit pursuant to this provision, Lender may pay such lien, or may contest the validity

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

Page 6

the lien, and Borrower shall pay all costs and expenses of such contest, including Lender's reasonable attorneys' fees.

**Taxes and Claims.** Pay and discharge when due all of Borrower's indebtedness, obligations, and claims that, if unpaid, might become a lien or charge upon the Collateral (or Improvements); provided, however, that Borrower shall not be required to pay and discharge any such indebtedness, obligation, or claim so long as (1) its legality shall be contested in good faith by appropriate proceedings, (2) the indebtedness, obligation, or claim does not become a lien or charge upon the Collateral or Improvements, and (3) Borrower shall have established on its books adequate reserves with respect to the amount contested in accordance with GAAP. If the indebtedness, obligation, or claim does become a lien or charge upon the Collateral or Improvements, Borrower shall remove the lien or charge as provided in the preceding paragraph.

**Environmental Studies.** Promptly conduct and complete all investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or byproduct of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests in the Collateral and Improvements.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Modification of Contract.** Make or permit to be made any modification of the Construction Contract.

**Liens.** Create or allow to be created any lien or charge upon the Collateral or the Improvements.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**GENERAL PROJECT PROVISIONS.** The following provisions relate to the construction and completion of the Project:

**Change Orders.** All requests for changes in the Plans and Specifications, other than minor changes involving no extra cost, must be in writing, signed by Borrower and the architect, and delivered to Lender for its approval. Borrower will not permit the performance of any work pursuant to any change order or modification of the Construction Contract or any Related Document without the written approval of Lender. Borrower will obtain any required permits or authorizations from governmental authorities having jurisdiction before approving or requesting a new change order.

**Purchase of Materials; Conditional Sales Contracts.** No materials, equipment, fixtures, or articles of personal property placed in or incorporated into the Project shall be purchased or installed under any Security Agreement or other agreement whereby the seller reserves or purports to reserve title or the right of removal or repossession, or the right to consider such items as personal property after their incorporation into the Project, unless otherwise authorized by Lender in writing.

**Lender's Right of Entry and Inspection.** Lender and its agents shall have at all times the right of entry and free access to the Property and the right to inspect all work done, labor performed, and materials furnished with respect to the Project. Lender shall have unrestricted access to and the right to copy all records, accounting books, contracts, subcontracts, bills, statements, vouchers, and supporting documents of Borrower relating in any way to the Project.

**Lender's Right to Stop Work.** If Lender in good faith determines that any work or materials do not conform to the approved Plans and Specifications or sound building practices, or otherwise depart from any of the requirements of this Agreement, Lender may require the work to be stopped and withhold disbursements until the matter is corrected. In such event, Borrower will promptly correct the work to Lender's satisfaction. No such action by Lender will affect Borrower's obligation to complete the Improvements on or before the Completion Date. Lender is under no duty to supervise or inspect the construction or examine any books and records. Any inspection or examination by Lender is for the sole purpose of protecting Lender's security and preserving Lender's rights under this Agreement. No default of Borrower will be waived by any inspection by Lender. In no event will any inspection by Lender be a representation that there has been or will be compliance with the Plans and Specifications or that the construction is free from defective materials or workmanship.

**Indemnity.** Borrower shall indemnify and hold Lender harmless from any and all claims asserted against Lender or the Property by any person, entity, or governmental body, or arising out of or in connection with the Property, Improvements, or Project. Lender shall be entitled to appear in any action or proceeding to defend itself against such claims, and all costs and expenses attorneys' fees incurred by Lender in connection with such defense shall be paid by Borrower to Lender. In case of any settlement, Lender shall be entitled to all sums which may be paid by Borrower thereunder, and such settlement shall be binding upon Borrower for the purposes of this indemnification. All amounts paid by Lender under this paragraph shall be secured by Lender's security agreement or Deed of Trust, if any, on the Property, shall be deemed an additional principal amount owing of the Loan, payable upon demand, and shall bear interest at the rate applicable to the Loan.

**Publicity.** Lender may display a sign at the construction site informing the public that Lender is the construction lender for the Project. Lender

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

may obtain other publicity in connection with the Project through press release and participation in ground-breaking and opening ceremonies and similar events.

**Actions.** Lender shall have the right to commence, appear in, or defend any action or proceeding purporting to affect the rights, duties, or liabilities of the parties to this Agreement, or the disbursement of funds from the Loan Fund. In connection with the right, Lender may incur and pay reasonable costs, expenses and attorneys' fees. Borrower covenants to pay to Lender on demand all such expenditures, together with interest from the date Lender incurs the expense at the rate specified in the Note, and Lender is authorized to disburse funds from the Loan Fund for such purposes.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution or termination of Borrower's existence as a going business or the death of any partner, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Construction Contract.** The Improvements are not constructed in accordance with the Plans and Specifications or in accordance with the terms of the Construction Contract.

**Cessation of Construction.** Prior to the completion of construction of the Improvements and equipping of the Project, the construction of the Improvements or the equipping of the Project is abandoned or work thereon ceases for a period of more than ten (10) days for any reason, or the Improvements are not completed for purposes of final payment to the General Contractor prior to December 9, 2005, regardless of the reason for the delay.

**Transfer of Property.** Sale, transfer, hypothecation, assignment, or conveyance of the Property or the Improvements or any portion thereof or interest therein by Borrower or any Borrower without Lender's prior written consent.

**Condemnation.** All or any material portion of the Collateral is condemned, seized, or appropriated without compensation, and Borrower does not within thirty (30) days after such condemnation, seizure, or appropriation, initiate and diligently prosecute appropriate action to contest in good faith the validity of such condemnation, seizure, or appropriation.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Events Affecting General Partner of Borrower.** Any of the preceding events occurs with respect to any general partner of Borrower or any general partner dies or becomes incompetent.

**Change in Ownership.** The resignation or exclusion of any general partner with an ownership interest of twenty-five percent (25%) or more in Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT; REMEDIES.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may, at its option, but without any obligation to do so, and in addition to any other right Lender without notice to Borrower may have, do any one or more of the following: (a) declare the entire unpaid principal balance on the Indebtedness and all accrued unpaid interest immediately due and payable, without notice to Borrower. (a) Cancel the Agreement, (b) Institute appropriate proceedings to enforce the performance of the Agreement; (c) Without further authorization or disbursement of Loan Funds, (d) Expend funds necessary to remedy the default, (e) Take possession of the Property and continue construction of the Project; (f) Accelerate maturity of the Note and/or indebtedness and demand payment of all sums due under the Note and/or Indebtedness; (g) Bring an action on the Note and/or Indebtedness; (h) Foreclose Lender's security agreement or Deed of Trust, if any, on the Property in any manner available under applicable law; and (i) Exercise any other right or remedy which it has under the Note or Related Documents or which is otherwise available at law or in equity or by statute.

**COMPLETION OF IMPROVEMENTS BY LENDER.** If Lender takes possession of the Collateral, it may take any and all actions necessary in its judgment to complete construction of the Improvements including but not limited to making changes in the Plans and Specifications, work, or materials and entering into, modifying or terminating any contractual arrangements, subject to Lender's right at any time to discontinue any work without liability. If Lender elects to complete the Improvements, it will not assume any liability to Borrower or to any other person for completing the Improvements or for the manner or quality of construction of the Improvements, and Borrower expressly waives any such liability. Borrower irrevocably appoints Lender as

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

Page 8

as attorney-in-fact, with full power of substitution, to complete the Improvements, to complete the construction of the Improvements. In any event, all sums expended by Lender in completing the construction of the Improvements will be considered to have been disbursed to Borrower and will be secured by the Collateral for the Loan. Any such sums that cause the principal amount of the Loan to exceed the face amount of the Note will be considered to be an additional Loan to Borrower, bearing interest at the Note rate and being secured by the Collateral. For these purposes, Borrower assigns to Lender all of its right, title and interest in and to the Project Documents; however Lender will not have any obligation under the Project Documents unless Lender expressly hereafter agrees to assume such obligations in writing. Lender will have the right to exercise any rights of Borrower under the Project Documents upon the occurrence of an Event of Default. Except as may be provided by applicable law, all of Lender's rights and remedies, whether evidenced by the Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently.

**ADDITIONAL DOCUMENTS.** Borrower shall provide Lender with the following additional documents:

**Articles or Agreement of Partnership.** Borrower has provided or will provide Lender with a certified copy of Borrower's Articles or Agreement of Partnership together with an appropriate partnership authority and designating one or more of the partners authorizing and designating one or more of the partners authorizing and designating one or more of the partners authorizing and designating one or more of the partners authorizing and designating one or more of the partners authorizing and designating one or more of the partners to consummate the transactions contemplated under this Agreement, and to consent to the remedies following any default by Borrower as provided in this Agreement and in any Security Agreements.

**Opinion of Counsel.** When required by Lender, Borrower has provided or will provide Lender with an opinion of Borrower's counsel certifying to and that: (1) Borrower's Note, any Security Agreements and this Agreement constitute valid and binding obligations of Borrower's part that are enforceable in accordance with their respective terms; (2) Borrower is validly existing and in good standing; (3) Borrower has authority to enter into this Agreement and to consummate the transactions contemplated under this Agreement; and (4) such other matters as may have been requested by Lender or by Lender's counsel.

**COVENANT DEFAULT.** Borrower or Guarantor (collectively, the "Borrower") fails to comply with or to perform to the financial covenants of this Agreement and fails to provide additional information and statements as Lender may request from time to time. If a Covenant Default shall occur, then the Lender may increase the loan rate by 1.0% _____ please initial

**ADDITIONAL PROVISION.** Borrower agrees that no junior lien or encumbrance of any nature against an or any portion of the Property permitted or suffered by Borrower until the loan is repaid in full. _____ (please initial)

**SCHEDULE OF RELEASE PRICES.** See Exhibit "One" attached herein and made a part hereof

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement.

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Authority to File Notices.** Borrower appoints and designates Lender as its attorney-in-fact to file for the record any notice that Lender deems necessary to protect its interest under this Agreement. This power shall be deemed coupled with an interest and shall be irrevocable while any sum of performance remains due and owing under any of the Related Documents.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Agreement has been accepted by Lender in the State of California.

**Indemnification of Lender.** Borrower agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's attorneys' fees, as well as Lender's architect's, and engineering fees), demands, liabilities, penalties, fines and forfeitures of any kind whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees and agents arising out of, relating to, in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here _____ )

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement.

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Construction Loan Agreement, as this Construction Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Construction Loan Agreement from time to time.

**Architect's Contract.** The words "Architect's Contract" mean the architect's contract between Borrower and the architect for the Project.

**Borrower.** The word "Borrower" means Marie Vista Estates, a California General Partnership and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Completion Date.** The words "Completion Date" mean December 9, 2005.

**Construction Contract.** The words "Construction Contract" mean the contract between Borrower and D G Johnson Construction, the general contractor for the Project, and any subcontractors, materialmen, laborers, or any other person or entity for performance of work on the Project or the delivery of materials to the Project.

**Contractor.** The word "Contractor" means D G Johnson Construction, the general contractor for the Project.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan and any guarantor under a completion guaranty agreement.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future buildings, structures, facilities, fixtures, additions, and similar construction on the Collateral.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means SECURITY PACIFIC BANK, its successors and assigns.

**Loan.** The word "Loan" means the loan or loans made to Borrower under this Agreement and the Related Documents as described.

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

Page 10

**Loan Fund.** The words "Loan Fund" mean the undisbursed proceeds of the Loan under this Agreement together with any equity funds or other deposits required from Borrower under this Agreement.

**Note.** The word "Note" means the promissory note dated December 28, 2004, in the original principal amount of $16,950,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure Indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Plans and Specifications.** The words "Plans and Specifications" mean the plans and specifications for the Project which have been submitted to and initialed by Lender, together with such changes and additions as may be approved by Lender in writing.

**Project.** The word "Project" means the construction project as described in the "Project Description" section of this Agreement.

**Project Documents.** The words "Project Documents" mean the Plans and Specifications, all studies, data and drawings relating to the Project, whether prepared by or for Borrower, the Construction Contract, the Architect's Contract, and all other contracts and agreements relating to the Project or the construction of the Improvements.

**Property.** The word "Property" means the property as described in the "Project Description" section of the Agreement.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in the "Project Description" section of the Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS CONSTRUCTION LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS CONSTRUCTION LOAN AGREEMENT IS DATED DECEMBER 28, 2004.**

**BORROWER:**

**MARIA VISTA ESTATES, A CALIFORNIA GENERAL PARTNERSHIP**

**PENDER PROPERTIES, INC., General Partner of Maria Vista Estates, a California General Partnership**

By: _____
Mark Pender, President of Pender Properties, Inc.

**BERING COMPANY, LLC, General Partner of Maria Vista Estates, a California General Partnership**

By: _____
Erik Bentson, Managing Member of Bering
Company, LLC

**LENDER:**

**SECURITY PACIFIC BANK**

By: _____
Authorized Signer

# EXHIBIT "4"

**JULIE RODEWALD**
San Luis Obispo County – Clerk/Recorder

Recorded at the request of
**Fidelity Title Company**

| SR |
|---|
| 1/07/2005 |
| 8:00 AM |

RECORDATION REQUESTED BY:
Fidelity National Title
#/86224-DH

WHEN RECORDED MAIL TO:
SECURITY PACIFIC BANK
845 N. EUCLID AVENUE
ONTARIO, CA 91762

SEND TAX NOTICES TO:
Maria Vista Estates, a California General Partnership
124 South Main Street, Suite C
Santa Monica, CA 93454

DOC#:  2005001667

| | | |
|---|---|---|
| Titles: 3 | Pages: | 11 |
| Fees | | 51.00 |
| Taxes | | 0.00 |
| Others | | 0.00 |
| PAID | | $51.00 |

FOR RECORDER'S USE ONLY

## CONSTRUCTION DEED OF TRUST

THIS DEED OF TRUST is dated December 28, 2004, among Maria Vista Estates, a General Partnership, whose address is 124 South Main Street, Suite C, Santa Monica, CA 93454 ("Trustor"); SECURITY PACIFIC BANK, whose address is 845 N. EUCLID AVENUE, ONTARIO, CA 91762 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and NETWORK BANK USA, whose address is 845 N. EUCLID AVENUE, ONTARIO , CA 91762 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in San Luis Obispo County, State of California:**



**Lot 1 and the "Remainder Lot" of Tract 1856, Phase 1 in the unincorporated area of the County of San Luis Obispo, State of California according to map recorded May 20, 2002 in Book 20, Page 12 of Maps in the Office of the County Recorder of said County.**

**The Real Property or its address is commonly known as   See legal description, Nipomo, CA.   The Assessor's Parcel Number for the Real Property is 090-301-059, 060**

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.   THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF TRUSTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN TRUSTOR AND LENDER OF EVEN DATE HEREWITH.   ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

CONSTRUCTION MORTGAGE. This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of California.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

   Possession and Use.  Until the occurrence of an Event of Default, Trustor may  (1)  remain in possession and control of the Property;  (2) use, operate or manage the Property; and  (3)  collect the Rents from the Property.

   Duty to Maintain.   Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

   Compliance With Environmental Laws.  Trustor represents and warrants to Lender that:  (1)  During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a)  any breach or violation of any Environmental Laws, (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or

## DEED OF TRUST
### (Continued)

from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.**  Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act.  Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Trustor agrees neither to abandon or leave unattended the Property.  Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**Construction Loan.**  If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Trustor shall pay in full all costs and expenses in connection with the work.  Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Deed of Trust shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor.  However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.**  Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.**  Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien.  In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property.  Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

## DEED OF TRUST
### (Continued)

Page 3

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $20,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the Improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $10,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall

## DEED OF TRUST
### (Continued)

Page 4

survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other

# DEED OF TRUST
## (Continued)

Page 5

agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Trustor's existence as a going business or the death of any partner, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any part of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent

## DEED OF TRUST
### (Continued)

provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of San Luis Obispo County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of

# DEED OF TRUST
## (Continued)

Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**ADDITIONAL PROVISION.** Borrower agrees that no junior lien or encumbrance of any nature against all or any portion of the Property shall be given, permitted or suffered by Borrower until the loan is repaid in full. (_____) (_____) please initial.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law. This Deed of Trust will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Deed of Trust has been accepted by Lender in the State of California.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waive Jury. All parties to this Deed of Trust hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here _____)**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means SECURITY PACIFIC BANK, and its successors and assigns.

**Borrower.** The word "Borrower" means Maria Vista Estates, a California General Partnership and includes all co-signers and co-makers signing the Note.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

## DEED OF TRUST
## (Continued)

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means SECURITY PACIFIC BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note dated December 28, 2004, **in the original principal amount of $15,800,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property. The words "Personal Property" also include all tangible and intangible items obtained or owned by, or in the possession of Trustor that are directly or indirectly related to the acquisition, development, design, construction, permitting, marketing, or habitation of the Real Property or the Improvements to be constructed on the Real Property, whether heretofore or hereafter issued, prepared, or executed, including without limitation all permits, licenses, authorizations and approvals, trademarks and tradenames, and any and all land use entitlements, development rights, sewer capacity, approvals, density allocations and other rights or approvals relating to or authorizing the development or occupancy of the Property, plus all utility or other deposits, reimbursement rights, studies, tests, contracts, plans and specifications, relating to the Property and Improvements.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means NETWORK BANK USA, whose address is 845 N. EUCLID AVENUE, ONTARIO , CA 91762 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Maria Vista Estates, a California General Partnership.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

**TRUSTOR:**

MARIA VISTA ESTATES, A CALIFORNIA GENERAL PARTNERSHIP

PENDER PROPERTIES, INC., General Partner of Maria Vista Estates, a California General Partnership

By: _____
Mark Pender, President of Pender Properties, Inc.

BENING COMPANY, LLC, General Partner of Maria Vista Estates, a California General Partnership

By: _____
Erik Benham, Managing Member of Bening Company, LLC

# DEED OF TRUST
## (Continued)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _____                )
                                                     ) SS
COUNTY OF _____                 )

On _____, 20_____ before me, _____,
personally appeared **Mark  Pender**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**WITNESS my hand and official seal.**

Signature _____                                    (Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _____                )
                                                     ) SS
COUNTY OF _____                 )

On _____, 20_____ before me, _____,
personally appeared **Erik Benham**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**WITNESS my hand and official seal.**

Signature _____                                    (Seal)

## DEED OF TRUST
### (Continued)

Page 10

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF *California*                    )
                                         ) SS
COUNTY OF *Santa Barbara*                )

On *January 3rd*          , 200*5* before me, *Dianne S. Pearson, Notary Public*
personally appeared Erik Benham, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Signature *Dianne S. Pearson*

> DIANNE S. PEARSON
> COMM. #1296861
> NOTARY PUBLIC - CALIFORNIA
> SANTA BARBARA COUNTY
> My Comm. Expires Mar. 12, 2005

(Seal)

---

### (DO NOT RECORD)
### REQUEST FOR FULL RECONVEYANCE
#### (To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have
been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or
pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust),
and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of
Trust. Please mail the reconveyance and Related Documents to:

Date: _____      Beneficiary: _____
                                                     By: _____
                                                    Its: _____

LASER PRO Lending, Ver. 5.34.00.006 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved.  - CA  F:\CFI\FIN\CFIPL\L001 FC  TR-904

Description: San Luis Obispo,CA Document-Year.DocID 2005.1667 Page: 10 of 11
Order: maura Comment:

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of LOS ANGELES                              } ss.

On JANUARY 04, 2005, before me, Mangala T.B. Tennakoon, Notary Public
Date                                    Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally    appeared    MARK PENDER
Name(s) of Signer(s)

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted,
executed the instrument.

MANGALA T.B. TENNAKOON
Commission # 1301684
Notary Public - California
Los Angeles County
My Comm. Expires Apr 21, 2005

WITNESS my hand and official seal.

Place Notary Seal Above

Signature of Notary Public

─────────────── OPTIONAL ───────────────
*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: DEED OF TRUST.

Document Date: _____    Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____        Signer's Name: _____
☐ Individual                              ☐ Individual
☐ Corporate Officer — Title(s): _____   ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General          ☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact                        ☐ Attorney in Fact
☐ Trustee                                 ☐ Trustee
☐ Guardian or Conservator                 ☐ Guardian or Conservator
☐ Other: _____             ☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____        Signer Is Representing: _____

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

**END OF DOCUMENT**

# EXHIBIT "5"

RECORDATION REQUESTED BY:

Fidelity National Title

#186224 ¬DH

WHEN RECORDED MAIL TO:
SECURITY PACIFIC BANK
845 N. EUCLID AVENUE
ONTARIO, CA 91762

SEND TAX NOTICES TO:
Maria Vista Estates, a California General Partnership
124 West Main Street, Suite C
Santa Maria, CA 93458-5050

---

JULIE RODEWALL                                                      JR
San Luis Obispo County — Clerk/Recorder              4/22/2005

Recorded at the request of                                       8:00 AM
Fidelity Title Company

DOC#: 2005031866        | Titles: 1 | Pages: 3

| Fees | 13.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $13.00 |

FOR RECORDER'S USE ONLY

# MODIFICATION OF DEED OF TRUST

THIS MODIFICATION OF DEED OF TRUST dated February 8, 2005, is made and executed between Maria Vista Estates, a General Partnership, whose address is 124 West Main Street, Suite C, Santa Maria, CA 93455-5050 ("Trustor") and SECURITY PACIFIC BANK, 845 N. EUCLID AVENUE, ONTARIO, CA 91762 ("Lender").

DEED OF TRUST. Lender and Trustor have entered into a Deed of Trust dated December 28, 2004 (the "Deed of Trust") which has been recorded in San Luis Obispo County, State of California, as follows:

Recorded on January 7, 2005 as Instrument Number 2005-001657 with the County of San Luis Obispo, State of California.

REAL PROPERTY DESCRIPTION. The Deed of Trust covers the following described real property located in San Luis Obispo County, State of California:

Lot 1 and the "Remainder Lot" of Tract 1856, Phase 1 in the unincorporated area of the County of San Luis Obispo, State of California according to map recorded May 20, 2002 in Book 20, Page 12 of Maps in the Office of the County Recorder of said County.

The Real Property or its address is commonly known as  See legal description, CA. The Assessor's Parcel Number for the Real Property is 090-301-059, 060

MODIFICATION. Lender and Trustor hereby modify the Deed of Trust as follows:

The original Deed of Trust reflected the incorrect Trustor address of 124 South Main Street, Suite C, Santa Monica, CA 93454.

The correct Trustor address is 124 West Main Street, Suite C, Santa Maria, CA 93458-5050.

CONTINUING VALIDITY. Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect. Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications. Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note"). It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it. This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND TRUSTOR AGREES TO ITS TERMS. THIS MODIFICATION OF DEED OF TRUST IS DATED FEBRUARY 8, 2005.

**EXHIBIT 3**

000041

EXHIBIT F

## MODIFICATION OF DEED OF TRUST
### (Continued)

Page 2

---

**TRUSTOR:**

MARIA VISTA ESTATES, A CALIFORNIA GENERAL PARTNERSHIP

PENDER PROPERTIES, INC., General Partner of Maria Vista Estates, a California General Partnership

By: _____
Mark Pender, President of Pender Properties, Inc.

BENING COMPANY, LLC, General Partner of Maria Vista Estates, a California General Partnership

By: _____
Erik Benham, Managing Member of Bening Company, LLC

**LENDER:**

SECURITY PACIFIC BANK

_____
Authorized Officer

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF California                    )
                                       ) SS
COUNTY OF Santa Barbara                )

On April 15th, 2005 before me, Diane S. Pearson, Notary Public personally appeared Mark Pender, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

DIANE S. PEARSON
Commission # 1553650
Notary Public - California
Santa Barbara County
My Comm. Expires Mar 12, 2009

(Seal)

---

# EXHIBIT 3

000042

EXHIBIT F

## MODIFICATION OF DEED OF TRUST
### (Continued)

Page 3

---

### CERTIFICATE OF ACKNOWLEDGMENT

STATE OF *California*                                    )
                                                        ) SS
COUNTY OF *Santa Barbara*                               )

On *April 15th* 20 05 before me, *Dianne S Pearson, Notary Public*
personally appeared Erik Benham, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *Dianne S. Pearson*

    DIANNE S. PEARSON
    Commission # 1553650
    Notary Public - California
    Santa Barbara County
    My Comm. Expires Mar 12, 2009

(Seal)

---

### CERTIFICATE OF ACKNOWLEDGMENT

STATE OF *California*                                   )
                                                        ) SS
COUNTY OF *San Bernardino*                              )

On *April 19, 2* 20 05 before me, *Patricia L. Plante*
personally appeared *David E. Clay* personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature *Patricia L. Plante*

    PATRICIA L. PLANTE
    Commission # 1378311
    Notary Public - California
    San Bernardino County
    My Comm. Expires Oct 11, 2006

(Seal)

---

LASER PRO Lending, Ver. 5.24.00.008 Copr. Harland Financial Solutions, Inc. 1997, 2005 All Rights Reserved. - CA F:\CFI\LPL\G203.FC TR-684

# EXHIBIT 3

000043

END OF DOCUMENT

EXHIBIT f

# EXHIBIT "6"

| | RIGHT THUMBPRINT | SIGNATURE OF SIGNER / ADDRESS OF SIGNER | MEANS OF IDENTIFICATION | CHARACTER OF | DOCUMENT DATE | TYPE | | |
|---|---|---|---|---|---|---|---|---|
| 1 | | | ☐ SATISFACTORY EVIDENCE ☐ PERSONAL KNOWLEDGE | | | | | |
| 2 | | | ☐ SATISFACTORY EVIDENCE ☐ PERSONAL KNOWLEDGE | | | | | |
| 3 | | Erik Benham | ☑ SATISFACTORY EVIDENCE  DL 3-4 provided | DLT | 12/28/04 | Ack | 5/14/05 | |
| | | | | Assign of facts | 12/28/04 | Ack | 5/14/05 | |
| | | | CDL No. B8931 | Hazard Substance Cert x statem Grant | 12/28/04 | Ack | 5/14/05 | |
| 4 | | Mark Pender | ☑ SATISFACTORY EVIDENCE  CDL No. B8931  exp. 5-18-05 | DLT | 12/28/04 | Ack | 5/14/05 | |
| | | | | Assign g Facts | 12/28/04 | Ack | 5/14/05 | |
| | | | | Hazardous Substances Cert x statem Grant | 12/28/04 | Ack | 5/14/05 | |
| 5 | | | ☐ SATISFACTORY EVIDENCE ☐ PERSONAL KNOWLEDGE | | | | | |
| 6 | | | ☑ PERSONAL KNOWLEDGE | | | | | |
| 7 | | | ☑ SATISFACTORY EVIDENCE ☐ PERSONAL KNOWLEDGE | | | | | |
| 8 | | | ☐ SATISFACTORY EVIDENCE ☑ PERSONAL KNOWLEDGE | | | | | |
| 9 | | Erik Benham  Erik Benham | ☑ SATISFACTORY EVIDENCE (DL B/L) | Grant Deed  N.O.C. | 10/14/05  10/14/05 | Ack  Grant | 6/14/05  6/14/05 | 183549 |
| 10 | | Erik Benham  Erik Benham | ☐ SATISFACTORY EVIDENCE (DL B/L) | Notice g  Non-Adversarial | 6/27/05 | Ack | 6/29/05 | Assem |

# EXHIBIT "7"



Mark Pender

5/6/2005 11:17 AM



May 16 –
May 22

9:00am 10:00am With papas and doug in yuiclapa
4:00pm 5:00pm Work out with DH

Bob Lewiton – 714 897 8035

Robert Webe
559 431 8334

3:00 w/ Linda & Ray – 721 6023

Jeff W
Joe Beele ?

620
7523

MuP

George

George Handy
Lick – Jamie – Lou Jons    4557726
also for Thurs re: ROB

mile Yard / Blair

Draft on the Note

quail Run

Lynn

FF
FEAT
– mve

7:00am 8:30am Bible study at LACC
8:00am 8:30am Long range meeting
9:00am 10:00am Work out with Jim S
11:00am 11:30am JDF MEETING

Crosout

– Airpine

Key for
D2

Frank S li: Harry
hear 6/8/9:30
San Bernen
5/25 openin

Dennie u: Chuck Rudges 541 878 2039
dates 4 Perry & Tires
MSN – Switch & POP

8:00am 9:00am Leave for Rower mart
4:00pm 5:00pm Women club champ at lacc

10:00 Kennel

Confirm re. investment rate for ROB
hold back $

Whitley / Dyer
Bill Cathran / unreilly – Nobel

7:30

12:00pm 12:30pm LUNCH WITH HUNTER, WHEELER AND KILEY
4:00pm 4:30pm DINNER TO FOLLOW

Pam K

Cynthia u'
5/31

8:00am 9:00am Championship tournament??
5:00pm 6:00pm Dinner party at home

Restoration
venden 10 – 2

8:00am 9:00am Championship tournament???

Monday @ LACC / 12:30
FS ⇒ letter u: 2 loans

Lynn u: updated & prorated ROB

Mark Pender

Dan u: 36K for roof & asphalt

1

5/11/2005 3:21 PM

# EXHIBIT "8"

**JULIE RODEWALD**
San Luis Obispo County — Clerk/Recorder

DG
5/24/2005
8:09 AM

Recorded at the request of
**Fidelity Title Company**

Recording Requested By:
Fidelity National Title
186224-DH

DOC#:  **2005042186**

| Titles: 3 | Pages: | 14 |
|---|---|---|
| Fees | | 60.00 |
| Taxes | | 0.00 |
| Others | | 0.00 |
| PAID | | $60.00 |

When Recorded Mail To:
Security Pacific Bank
845 N. Euclid Avenue
Ontario, Ca. 91762

---

## CONSTRUCTION DEED OF TRUST

---

Document Title (s)

This document is being re-recorded to correct the legal description as it was originally intended. See corrected legal description as shown on EXHIBIT "A" herein

**JULIE RODEWALD**
San Luis Obispo County — Clerk/Recorder

8R
1/07/2005
8:00 AM

Recorded at the request of
**Fidelity Title Company**

RECORDATION REQUESTED BY:
Fidelity National Title
#18C224-DH

| DOC#: 2005001667 | Titles: 3 | Pages: 11 |
|---|---|---|
| | Fees | 51.00 |
| | Taxes | 0.00 |
| | Others | 0.00 |
| | PAID | $51.00 |

WHEN RECORDED MAIL TO:
SECURITY PACIFIC BANK
845 N. EUCLID AVENUE
ONTARIO, CA 91762

SEND TAX NOTICES TO:
Maria Vista Estates, a California General Partnership
124 South Main Street, Suite C
Santa Monica, CA 93454

FOR RECORDER'S USE ONLY

## CONSTRUCTION DEED OF TRUST

THIS DEED OF TRUST is dated **December 28, 2004**, among **Maria Vista Estates, a General Partnership**, whose address is 124 South Main Street, Suite C, Santa Monica, CA 93454 ("Trustor"); SECURITY PACIFIC BANK, whose address is 845 N. EUCLID AVENUE, ONTARIO, CA 91762 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and NETWORK BANK USA, whose address is 845 N. EUCLID AVENUE, ONTARIO , CA  91762 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "**Real Property**") located in San Luis Obispo County, State of California:

Lot 1 and the "**Remainder Lot**" of Tract 1856, Phase 1 in the unincorporated area of the County of San Luis Obispo, State of California according to map recorded May 20, 2002 in Book 20, Page 12 of Maps in the Office of the County Recorder of said County.

The Real Property or its address is commonly known as  See legal description, Nipomo, CA.  The Assessor's Parcel Number for the Real Property is 090-301-059, 060

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.  THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF TRUSTOR'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN TRUSTOR AND LENDER OF EVEN DATE HEREWITH.  ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

CONSTRUCTION MORTGAGE. This Deed of Trust is a "construction mortgage" for the purposes of Sections 9-334 and 2A-309 of the Uniform Commercial Code, as those sections have been adopted by the State of California.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Trustor may  (1)  remain in possession and control of the Property;  (2) use, operate or manage the Property; and  (3)  collect the Rents from the Property.

Duty to Maintain.  Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance With Environmental Laws.  Trustor represents and warrants to Lender that:  (1)  During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or

# DEED OF TRUST
## (Continued)

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means SECURITY PACIFIC BANK, its successors and assigns.

**Note.** The word "Note" means the promissory note dated December 28, 2004, **in the original principal amount of $15,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property. The words "Personal Property" also include all tangible and intangible items obtained or owned by, or in the possession of Trustor that are directly or indirectly related to the acquisition, development, design, construction, permitting, marketing, or habitation of the Real Property or the Improvements to be constructed on the Real Property, whether heretofore or hereafter issued, prepared, or executed, including without limitation all permits, licenses, authorizations and approvals, trademarks and tradenames, and any and all land use entitlements, development rights, sewer capacity, approvals, density allocations and other rights or approvals relating to or authorizing the development or occupancy of the Property, plus all utility or other deposits, reimbursement rights, studies, tests, contracts, plans and specifications, relating to the Property and Improvements.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means NETWORK BANK USA, whose address is 946 N. EUCLID AVENUE, ONTARIO , CA  91762 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Maria Vista Estates, a California General Partnership.

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.

TRUSTOR:

MARIA VISTA ESTATES, A CALIFORNIA GENERAL PARTNERSHIP

PENDER PROPERTIES, INC., General Partner of Maria Vista Estates, a California General Partnership

By: _____
Mark Pender, President of Pender Properties, Inc.

BENING COMPANY, LLC, General Partner of Maria Vista Estates, a California General Partnership

By: _____
Erik Benham, Managing Member of Bening Company, LLC

# DEED OF TRUST
## (Continued)

Page 9

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _____    )
                                       ) SS
COUNTY OF _____      )

On _____, 20____ before me, _____
personally appeared Mark Pender, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Signature _____                                    (Seal)

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _____    )
                                       ) SS
COUNTY OF _____      )

On _____, 20____ before me, _____
personally appeared Erik Benham, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Signature _____                                    (Seal)

# DEED OF TRUST
## (Continued)

Page 10

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _California_ )
                                                            ) SS
COUNTY OF _Santa Barbara_ )

On _January 3rd_ , 20_05_ before me, _Dianne S. Pearson, Notary Public_ , personally appeared Erik Banham, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Dianne S. Pearson_

DIANNE S. PEARSON
COMM. #1296861
NOTARY PUBLIC - CALIFORNIA
SANTA BARBARA COUNTY
My Comm. Expires Mar. 12, 2005

(Seal)

---

## (DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
### (To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____

Beneficiary: _____

By: _____

Its: _____

LASER PRO Lending, Ver. 5.24.40.00 Copr. Harland Financial Solutions, Inc. 1997, 2004. All Rights Reserved. - CA F:\CFI\PROSCPFL\R30E\.FC WI-484

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of LOS ANGELES } ss.

On JANUARY 04, 2005 before me, Mangala T.B. Tennakoon Notary Public
Date                                             Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared MARK PENDERS
                                    Name(s) of Signer(s)

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted,
executed the instrument.

MANGALA T.B. TENNAKOON
Commission # 1301684
Notary Public - California
Los Angeles County
My Comm. Expires Apr 21, 2005

WITNESS my hand and official seal.

Place Notary Seal Above                          Signature of Notary Public

─────────────── OPTIONAL ───────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: DEED OF TRUST.

Document Date: _____    Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Top of thumb here

Signer Is Representing: _____

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827


END OF DOCUMENT

STATE OF __California__

COUNTY OF __San Luis Obispo__

On __May 16, 2005__ before me,__Dianna Voss__
                              (Name, Title of Officer)

personally appeared__Erik Benham and Mark Pender__

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

WITNESS my hand and official seal.

_____
(Signature of Notary Public)

DIANNA VOSS
COMM. # 1332514
NOTARY PUBLIC-CALIFORNIA
SAN LUIS OBISPO COUNTY
COMM. EXP. NOV. 30, 2005

(This area for notarial seal)

EXHIBIT "A"

Parcel 1:

The remainder lot of Tract 1856, Phase 1, in the unincorporated area of the County of San Luis Obispo, State of California, according to map recorded May 20, 2002 in Book 20, Page 12 of Maps, in the office of the County Recorder of said County.

Assessor's Parcel No. 090-301-060

Parcel 2:

The remainder lot of Tract 1802, Phase 1, in the unincorporated area of the County of San Luis Obispo, State of California, according to map recorded June 19, 2002 in Book 20, Page 17 of Maps, in the office of the County Recorder of said County.

Assessor's Parcel No. Portions of 090-301-062 and 063

**END OF DOCUMENT**

# EXHIBIT "9"

**Roberta**

**From:**    Roberta [roberta@trincon-inc.com]
**Sent:**    Thursday, June 17, 2010 8:23 PM
**To:**    Roberta
**Subject:** FW: Maria Vista


**From:** Lisa Fuller [mailto:LFuller@securitypacificbank.com]
**Sent:** Tuesday, June 21, 2005 10:02 AM
**To:** Roberta@trincon-inc.com
**Subject:** RE: Maria Vista


Is there a way you could fax it to him and fax it back to us?  We need these items (at least a fax copy) in file before the FDIC gets here.  Thanks.

**Lisa Fuller**
Note Department Manager
**Security Pacific Bank**

Voice: 909-292-2834
Fax: 909-391-1168
Email: lfuller@securitypacificbank.com

845 N. Euclid Avenue
Ontario, CA 91762

## SECURITY PACIFIC BANK

The information contained in this electronic message is privileged and confidential information intended only for the use of the owner of the email address listed as the recipient of this message. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone at (909) 983-4600 or by return email, and delete this email and any attachments from your electronic files. Thank you.


**From:** Patricia Plante
**Sent:** Tuesday, June 21, 2005 8:32 AM
**To:** Lisa Fuller
**Subject:** FW: Maria Vista

FYI

-----Original Message-----
**From:** Roberta [mailto:Roberta@trincon-inc.com]
**Sent:** Tuesday, June 21, 2005 8:24 AM
**To:** Patricia Plante
**Subject:** Maria Vista

6/17/2010

Good morning Pat,

We received the documents for the revision of the legal descriptions for MVE, Mark Pender is out of the Country and will be returning after 4th of July weekend. Once he returns we will have him sign, notarize and forward to you immediately.

In addition, we would like to follow up on the loan increase Mr. Benham discussed with Dave Clary to move forward with the construction at Maria Vista, please have Dave Clary contact Erik to discuss.

Thanks,

**Roberta Chavez**
Trincon, Inc.
124 W Main Street, Suite C
Santa Maria, CA 93458
805-925-1710 ext 100
roberta@trincon-inc.com

6/17/2010

# EXHIBIT "10"

Jun 24 05 02:31p        Trinoon, Inc.                805-925-0422              p.1



# SECURITY PACIFIC BANK

(formerly Network Bank USA)

June 20, 2005

Maria Vista Estates
124 West Main Street, Suite C
Santa Maria, CA 93454

This is our formal acknowledgement that the loan documents dated December 28, 2004 reflect the incorrect legal description:

> Lot 1 and the "Remainder Lot" of Tract 1856, Phase 1 in the unincorporated area of the County of San Luis Obispo, State of California according to map recorded May 20, 2002 in Book 20, Page 12 of Maps in the Office of the County Recorder of said County.

The correct legal description is:

> Parcel 1:
>
> The "Remainder Lot" of Tract 1856, Phase 1 in the unincorporated area of the County of San Luis Obispo, State of California according to map recorded May 20, 2002 in Book 20, Page 12 of Maps in the office of the County Recorder of said County.
>
> Parcel 2:
>
> The "Remainder Lot" of Tract 1802, Phase 1 in the unincorporated area of the County of San Luis Obispo, State of California according to map recorded June 19, 2002 in Book 20, Page 17 of Maps in the office of the County Recorder of said County.

This document will be attached to the foregoing loan documents to reflect the acknowledgement of the incorrect legal description on said loan documents. No other terms or modifications to the loan documents are made by this acknowledgement.

---

**Ontario • 845 N Euclid Ave. PO Box 630 • Ontario, CA 91762 • (909) 983-4600**

Los Angeles • Downtown Los Angeles • Westwood • Seal Beach

Jun 24 05 02:31p    Trincon, Inc.    805-925-0422    p.2

Acknowledged By:

Maria Vista Estates, a California General Partnership

Pender Properties, Inc,. General Partner of Maria Vista Estates, a California General
Partnership

By: _____

    Mark Pender, President of Pender Properties, Inc.


Bening Company, LLC, General Partner of Maria Vista Estates, a California General
Partnership

By: _____

    Erik Benham, Managing Member of Bening Company, LLC

# EXHIBIT "11"

# CONSTRUCTION LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $7,850,000.00 | 11-02-2005 | 11-02-2006 | | | | dc | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Maria Vista Estates, a California General Partnership
124 West Main Street, Suite C
Santa Maria, CA 93458-5050

**Lender:** SECURITY PACIFIC BANK
845 N. EUCLID AVENUE
ONTARIO, CA 91762

**THIS CONSTRUCTION LOAN AGREEMENT dated November 2, 2005, is made and executed between Maria Vista Estates, a California General Partnership ("Borrower") and SECURITY PACIFIC BANK ("Lender") on the following terms and conditions. Borrower has applied to Lender for one or more loans for purposes of constructing the Improvements on the Real Property described below. Lender is willing to lend the loan amount to Borrower solely under the terms and conditions specified in this Agreement and in the Related Documents, to each of which Borrower agrees. Borrower understands and agrees that: (A) In granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, and (B) all such Loans shall be and remain subject to the terms and conditions of this Agreement.**

**TERM.** This Agreement shall be effective as of November 2, 2005, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**ADVANCE AUTHORITY.** The following persons currently are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of their authority: **Mark Pender, President of Pender Properties, Inc.; and Erik Benham, Managing Member of Bening Company, LLC. Any one (1) of the listed authorized person may request for loan advances.**

**LOAN.** The Loan shall be in an amount not to exceed the principal sum of **U.S. $7,850,000.00** and shall bear interest on so much of the principal sum as shall be advanced pursuant to the terms of this Agreement and the Related Documents. The Loan shall bear interest on each Advance from the date of the Advance in accordance with the terms of the Note. Borrower shall use the Loan Funds solely for the payment of: (A) the costs of constructing the Improvements and equipping the Project in accordance with the Construction Contract; (B) other costs and expenses incurred or to be incurred in connection with the construction of the Improvements as Lender in its sole discretion shall approve; and (C) if permitted by Lender, interest due under the Note, including all expenses and all loan and commitment fees described in this Agreement. The Loan amount shall be subject at all times to all maximum limits and conditions set forth in this Agreement or in any of the Related Documents, including without limitation, any limits relating to loan to value ratios and acquisition and Project costs.

**PROJECT DESCRIPTION.** The word "Project" as used in this Agreement means the construction and completion of all Improvements contemplated by this Agreement, including without limitation the erection of the building or structure on the Real Property identified to this Agreement by Borrower and Lender, installation of equipment and fixtures, landscaping, and all other work necessary to make the Project usable and complete for the intended purposes. The Project includes the following work:

**Construction of 15 Production Homes in the City of Nipomo, California.**

The word "Property" as used in this Agreement means the Real Property together with all Improvements, all equipment, fixtures, and other articles of personal property now or subsequently attached or affixed to the Real Property, together with all accessions, parts, and additions to, all replacements of, and all substitutions for any of such property, and all proceeds (including insurance proceeds and refunds of premiums) from any sale or other disposition of such property. **The real estate described below constitutes the Real Property as used in this Agreement.**

**The real estate legally described as:**
THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UN-INCORPORATED AREA OF THE COUNTY OF SAN LUIS OBISPO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

**Lots 15, 16, 33 through 38 inclusive and 46 through 52 inclusive of tract 1802, Phase 2, in the County of San Luis Obispo, State of California, according to map recorded February 1, 2005 in Book 25, Pages 36-46 of Maps, in the Office of the County Recorder of said County.**
**Its address is commonly known as:**
Real Property located at See legal description(Tract 1802-2 Nipomo), Nipomo, CA.

**FEES AND EXPENSES.** Whether or not the Project shall be consummated, Borrower shall assume and pay upon demand all out-of-pocket expenses incurred by Lender in connection with the preparation of loan documents and the making of the Loan, including without limitation the following: (A) all closing costs, loan fees, and disbursements; (B) all expenses of Lender's legal counsel; and (C) all title examination fees, title insurance premiums, appraisal fees, survey costs, required fees, and filing and recording fees.

**NO CONSTRUCTION PRIOR TO RECORDING OF SECURITY DOCUMENT.** Borrower will not permit any work or materials to be furnished in connection with the Project until (A) Borrower has signed the Related Documents; (B) Lender's mortgage or deed of trust and other Security Interests in the Property have been duly recorded and perfected; (C) Lender has been provided evidence, satisfactory to Lender, that Borrower has obtained all insurance required under this Agreement or any Related Documents and that Lender's liens on the Property and Improvements are valid perfected first liens, subject only to such exceptions, if any, acceptable to Lender.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a partnership which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of California. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign partnership in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 124 West Main Street, Suite C, Santa Maria, CA 93458-5050. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's principal office address or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: **None.**

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles or agreements of partnership, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**Title to Property.** Borrower has, or on the date of first disbursement of Loan proceeds will have, good and marketable title to the Collateral free and clear of all defects, liens, and encumbrances, excepting only liens for taxes, assessments, or governmental charges or levies not yet delinquent or payable without penalty or interest, and such liens and encumbrances as may be approved in writing by the Lender. The Collateral is contiguous to publicly dedicated streets, roads, or highways providing access to the Collateral.

**Project Costs.** The total cost for the Project shall not exceed $5,559,560.00. The Project costs are true and accurate estimates of the costs necessary to complete the Improvements in a good and workmanlike manner according to the Plans and Specifications presented by Borrower to Lender, and Borrower shall take all steps necessary to prevent the actual cost of the Improvements from exceeding the Project costs.

**Utility Services.** All utility services appropriate to the use of the Project after completion of construction are available at the boundaries of the Collateral.

**Assessment of Property.** The Collateral is and will continue to be assessed and taxed as an independent parcel by all governmental authorities.

**Compliance with Governing Authorities.** Borrower has examined and is familiar with all the easements, covenants, conditions, restrictions, reservations, building laws, regulations, zoning ordinances, and federal, state, and local requirements affecting the Project. The Project will at all times and in all respects conform to and comply with the requirements of such easements, covenants, conditions, restrictions, reservations, building laws, regulations, zoning ordinances, and federal, state, and local requirements.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Approval of Contractors, Subcontractors, and Materialmen.** Lender shall have approved a list of all contractors employed in connection with the construction of the Improvements, showing the name, address, and telephone number of each contractor, a general description of the nature of the work to be done, the labor and materials to be supplied, the names of materialmen, if known, and the approximate dollar value of the labor, work, or materials with respect to each contractor or materialman. Lender shall have the right to communicate with any person to verify the facts disclosed by the list or by any application for any Advance, or for any other purpose.

**Plans, Specifications, and Permits.** Lender shall have received and accepted a complete set of written Plans and Specifications setting forth all Improvements for the Project, and Borrower shall have furnished to Lender copies of all permits and requisite approvals of any governmental body necessary for the construction and use of the Project.

**Architect's and Construction Contracts.** Borrower shall have furnished in form and substance satisfactory to Lender an executed copy of the Architect's Contract and an executed copy of the Construction Contract.

**Related and Support Documents.** Borrower shall provide to Lender in form satisfactory to Lender the following support documents for the Loan: **Assignment of Architect's Contract, Assignment of Construction Contract and Completion Guaranty.**

**Budget and Schedule of Estimated Advances.** Lender shall have approved detailed budget and cash flow projections of total Project costs and a schedule of the estimated amount and time of disbursements of each Advance.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the consummation of the Project and duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, in their sole discretion, may require.

**Bond.** If requested by Lender, Borrower shall have furnished a performance and payment bond in an amount equal to 100% of the amount of the Construction Contract, as well as a materialmen's and mechanics' payment bond, with such riders and supplements as Lender may require, each in form and substance satisfactory to Lender, naming the General Contractor as principal and Lender as an additional obligee. Any required bonds and the contracts which they cover must be duly recorded or filed in accordance with California Civil Code Section 3235, if required by Lender.

**Appraisal.** If required by Lender, an appraisal shall be prepared for the Property, at Borrower's expense, which in form and substance shall be satisfactory to Lender, in Lender's sole discretion, including applicable regulatory requirements.

**Plans and Specifications.** If requested by Lender, Borrower shall have assigned to Lender on Lender's forms the Plans and Specifications for the Project.

**Environmental Report.** If requested by Lender, Borrower shall have furnished to Lender, at Borrower's expense, an environmental report and certificate on the Property in form and substance satisfactory to Lender, prepared by an engineer or other expert satisfactory to Lender stating that the Property complies with all applicable provisions and requirements of the "Hazardous Substances" paragraph set forth in this Agreement.

**Soil Report.** If requested by Lender, Borrower shall have furnished to Lender, at Borrower's expense, a soil report for the Property in form and substance satisfactory to Lender, prepared by a registered engineer satisfactory to Lender stating that the Property is free from soil or other geological conditions that would preclude its use or development as contemplated without extra expense for precautionary, corrective or remedial measures.

**Survey.** If requested by Lender, Borrower shall have furnished to Lender a survey of recent date, prepared and certified by a qualified surveyor and providing that the Improvements, if constructed in accordance with the Plans and Specifications, shall lie wholly within the boundaries of the Collateral without encroachment or violation of any zoning ordinances, building codes or regulations, or setback requirements, together with such other information as Lender in its sole discretion may require.

**Zoning.** Borrower shall have furnished evidence satisfactory to Lender that the Collateral is duly and validly zoned for the construction, maintenance, and operation of the Project.

**Title Insurance.** Borrower shall have provided to Lender an ALTA Lender's extended coverage policy of title insurance with such endorsements as Lender may require, issued by a title insurance company acceptable to Lender and in a form, amount, and content satisfactory to Lender, insuring or agreeing to insure that Lender's security agreement or other security document on the Property is or will be upon recordation a valid first lien on the Property free and clear of all defects, liens, encumbrances, and exceptions except those as specifically accepted by Lender in writing. If requested by Lender, Borrower shall provide to Lender, at Borrower's expense, a foundation endorsement (CLTA 102.5 or its equivalent) to the title policy upon the completion of each foundation for the Improvements, showing no encroachments, and upon completion an endorsement which insures the lien-free completion of the Improvements (CLTA 101 series, as required by Lender). Specifically, Borrower shall provide to Lender the following title insurance endorsements: **100; 116; 110.9.**

**Insurance.** Unless waived by Lender in writing, Borrower shall have delivered to Lender the following insurance policies or evidence thereof: (a) an all risks course of construction insurance policy (builder's risk), with extended coverage covering the Improvements issued in an amount and by a company acceptable to Lender, containing a loss payable or other endorsement satisfactory to Lender insuring Lender as mortgagee, together with such other endorsements as may be required by Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender; (b) owners and General Contractor general liability insurance, public liability and workmen's compensation insurance; (c) flood insurance if required by Lender or applicable law; and (d) all other insurance required by this Agreement or by the Related Documents.

**Workers' Compensation Coverage.** Provide to Lender proof of the General Contractor's compliance with all applicable workers' compensation laws and regulations with regard to all work performed on the Project.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Satisfactory Construction.** All work usually done at the stage of construction for which disbursement is requested shall have been done in a good and workmanlike manner and all materials and fixtures usually furnished and installed at that stage of construction shall have been furnished and installed, all in compliance with the Plans and Specifications. Borrower shall also have furnished to Lender such proofs as Lender may require to establish the progress of the work, compliance with applicable laws, freedom of the Property from liens, and the basis for the requested disbursement.

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

**Certification.** Borrower shall have furnished to Lender a certification by an engineer, architect, or other qualified inspector acceptable to Lender that the construction of the Improvements has complied and will continue to comply with all applicable statutes, ordinances, codes, regulations, and similar requirements.

**Lien Waivers.** Borrower shall have obtained and attached to each application for an Advance, including the Advance to cover final payment to the General Contractor, executed acknowledgments of payments of all sums due and releases of mechanic's and materialmen's liens, satisfactory to Lender, from any party having lien rights, which acknowledgments of payment and releases of liens shall cover all work, labor, equipment, materials done, supplied, performed, or furnished prior to such application for an Advance.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**DISBURSEMENT OF LOAN FUNDS.** The following provisions relate to the disbursement of funds from the Loan Fund.

**Application for Advances.** Each application shall be stated on a standard AIA payment request form or other form approved by Lender, executed by Borrower, and supported by such evidence as Lender shall reasonably require. Borrower shall apply only for disbursement with respect to work actually done by the General Contractor and for materials and equipment actually incorporated into the Project. Each application for an Advance shall be deemed a certification of Borrower that as of the date of such application, all representations and warranties contained in the Agreement are true and correct, and that Borrower is in compliance with all of the provisions of this Agreement.

**Payments.** At the sole option of Lender, Advances may be paid in the joint names of Borrower and the General Contractor, subcontractor(s), or supplier(s) in payment of sums due under the Construction Contract. At its sole option, Lender may directly pay the General Contractor and any subcontractors or other parties the sums due under the Construction Contract. Borrower appoints Lender as its attorney-in-fact to make such payments. This power shall be deemed coupled with an interest, shall be irrevocable, and shall survive an Event of Default under this Agreement.

**Projected Cost Overruns.** If Lender at any time determines in its sole discretion that the amount in the Loan Fund is insufficient, or will be insufficient, to complete fully and to pay for the Project, then within ten (10) days after receipt of a written request from Lender, Borrower shall deposit in the Loan Fund an amount equal to the deficiency as determined by Lender. The judgment and determination of Lender under this section shall be final and conclusive. Any such amounts deposited by Borrower shall be disbursed prior to any Loan proceeds.

**Final Payment to General Contractor.** Upon completion of the Project and fulfillment of the Construction Contract to the satisfaction of Lender and provided sufficient Loan Funds are available, Lender shall make an Advance to cover the final payment due to the General Contractor upon delivery to Lender of endorsements to the ALTA title insurance policy following the posting of the completion notice, as provided under applicable law. Construction shall not be deemed complete for purposes of final disbursement unless and until Lender shall have received all of the following:

(1) Evidence satisfactory to Lender that all work under the Construction Contract requiring inspection by any governmental authority with jurisdiction has been duly inspected and approved by such authority, that a certificate of occupancy has been issued, and that all parties performing work have been paid, or will be paid, for such work;

(2) A certification by an engineer, architect, or other qualified inspector acceptable to Lender that the Improvements have been completed substantially in accordance with the Plans and Specifications and the Construction Contract, that direct connection has been made to all utilities set forth in the Plans and Specifications, and that the Project is ready for occupancy; and

(3) Acceptance of the completed Improvements by Lender and Borrower.

**Construction Default.** If Borrower fails in any respect to comply with the provisions of this Agreement or if construction ceases before completion regardless of the reason, Lender, at its option, may refuse to make further Advances, may accelerate the indebtedness under the terms of the Note, and without thereby impairing any of its rights, powers, or privileges, may enter into possession of the construction site and perform or cause to be performed any and all work and labor necessary to complete the Improvements, substantially in accordance with the Plans and Specifications.

**Damage or Destruction.** If any of the Collateral or Improvements is damaged or destroyed by casualty of any nature, within sixty (60) days thereafter Borrower shall restore the Collateral and Improvements to the condition in which they were before such damage or destruction with funds other than those in the Loan Fund. Lender shall not be obligated to make disbursements under this Agreement until such restoration has been accomplished.

**Adequate Security.** When any event occurs that Lender determines may endanger completion of the Project or the fulfillment of any condition or covenant in this Agreement, Lender may require Borrower to furnish, within ten (10) days after delivery of a written request, adequate security to eliminate, reduce, or indemnify Lender against, such danger. In addition, upon such occurrence, Lender in its sole discretion may advance funds or agree to undertake to advance funds to any party to eliminate, reduce, or indemnify Lender against, such danger or to complete the Project. All sums paid by Lender pursuant to such agreements or undertakings shall be for Borrower's account and shall be without prejudice to Borrower's rights, if any, to receive such funds from the party to whom paid. All sums expended by Lender in the exercise of its option to complete the Project or protect Lender's interests shall be payable to Lender on demand together with interest from the date of the Advance at the rate applicable to the Loan. In addition, any Advance of funds under this Agreement, including without limitation direct disbursements to the General Contractor or other parties in payment of sums due under the Construction Contract, shall be deemed to have been expended by or on behalf of Borrower and to have been secured by Lender's Deed of Trust, if any, on the Collateral.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**LIMITATION OF RESPONSIBILITY.** The making of any Advance by Lender shall not constitute or be interpreted as either (A) an approval or acceptance by Lender of the work done through the date of the Advance, or (B) a representation or indemnity by Lender to any party against any deficiency or defect in the work or against any breach of any contract. Inspections and approvals of the Plans and Specifications, the Improvements, the workmanship and materials used in the Improvements, and the exercise of any other right of inspection, approval, or inquiry granted to Lender in this Agreement are acknowledged to be solely for the protection of Lender's interests, and under no circumstances shall they be construed to impose any responsibility or liability of any nature whatsoever on Lender to any party. Neither Borrower nor any contractor, subcontractor, materialman, laborer, or any other person shall rely, or have any right to rely, upon Lender's determination of the appropriateness of any Advance. No disbursement or approval by Lender shall constitute a representation by Lender as to the nature of the Project, its construction, or its intended use for Borrower or for any other person, nor shall it constitute an indemnity by Lender to Borrower or to any other person against any deficiency or defects in the Project or against any breach of any contract.

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

Page 5

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, lists of assets and liabilities, agings of receivables and payables, inventory schedules, budgets, forecasts, tax returns, and other reports with respect to Borrower's financial condition and business operations as Lender may request from time to time.

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Insurance.** Maintain fire and other risk insurance, hail, federal crop insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
| --- | --- |
| Erik Behnam | Unlimited |
| Mark L. Pender | Unlimited |

**Loan Fees, Charges and Expenses.** Whether or not the Project is completed, Borrower also shall pay upon demand all out-of-pocket expenses incurred by Lender in connection with the preparation of loan documents and the making of the Loan, including, without limitation, all closing costs, fees, and disbursements, all expenses of Lender's legal counsel, and all title examination fees, title insurance premiums, appraisal fees, survey costs, required fees, and filing and recording fees.

**Loan Proceeds.** Use the Loan Funds solely for payment of bills and expenses directly related to the Project.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Construction of the Project.** Commence construction of the Project no later than December 2, 2005, and cause the Improvements to be constructed and equipped in a diligent and orderly manner and in strict accordance with the Plans and Specifications approved by Lender, the Construction Contract, and all applicable laws, ordinances, codes, regulations, and rights of adjoining or concurrent property owners. Borrower agrees to complete the Project for purposes of final payment to the General Contractor on or before November 2, 2006, regardless of the reason for any delay.

**Defects.** Upon demand of Lender, promptly correct any defect in the Improvements or any departure from the Plans and Specifications not approved by Lender in writing before further work shall be done upon the portion of the Improvements affected.

**Project Claims and Litigation.** Promptly inform Lender of (1) all material adverse changes in the financial condition of the General Contractor; (2) any litigation and claims, actual or threatened, affecting the Project or the General Contractor, which could materially affect the successful completion of the Project or the ability of the General Contractor to complete the Project as agreed; and (3) any condition or event which constitutes a breach or default under any of the Related Documents or any contract related to the Project.

**Payment of Claims and Removal of Liens.** (1) Cause all claims for labor done and materials and services furnished in connection with the improvements to be fully paid and discharged in a timely manner, (2) diligently file or procure the filing of a valid notice of completion of the Improvements, or such comparable document as may be permitted under applicable lien laws, (3) diligently file or procure the filing of a notice of cessation, or such comparable document as may be permitted under applicable lien laws, upon the happening of cessation of labor on the

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

Improvements for a continuous period of thirty (30) days or more, and (4) take all reasonable steps necessary to remove all claims of liens against the Collateral, the Improvements or any part of the Collateral or Improvements, or any rights or interests appurtenant to the Collateral or Improvements. Upon Lender's request, Borrower shall make such demands or claims upon or against laborers, materialmen, subcontractors, or other persons who have furnished or claim to have furnished labor, services, or materials in connection with the Improvements, which demands or claims shall under the laws of the State of California require diligent assertions of lien claims upon penalty of loss or waiver thereof. Borrower shall, within ten (10) days after the filing of any claim of lien that is disputed or contested by Borrower, record or cause the General Contractor for the construction of the Improvements to record in the appropriate governmental office, a surety bond pursuant to California law sufficient to release the claim of lien and, within five (5) days of Lender's demand, make suitable provision by deposit of funds with Lender in an amount satisfactory to Lender or by bond satisfactory to Lender for the possibility that the contest will be unsuccessful. If Borrower fails to remove any lien on the Collateral or Improvements or provide a bond or deposit pursuant to this provision, Lender may pay such lien, or may contest the validity of the lien, and Borrower shall pay all costs and expenses of such contest, including Lender's reasonable attorneys' fees.

**Taxes and Claims.** Pay and discharge when due all of Borrower's indebtedness, obligations, and claims that, if unpaid, might become a lien or charge upon the Collateral or Improvements; provided, however, that Borrower shall not be required to pay and discharge any such indebtedness, obligation, or claim so long as (1) its legality shall be contested in good faith by appropriate proceedings, (2) the indebtedness, obligation, or claim does not become a lien or charge upon the Collateral or Improvements, and (3) Borrower shall have established on its books adequate reserves with respect to the amount contested in accordance with GAAP. If the indebtedness, obligation, or claim does become a lien or charge upon the Collateral or Improvements, Borrower shall remove the lien or charge as provided in the preceding paragraph.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests in the Collateral and Improvements.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Modification of Contract.** Make or permit to be made any modification of the Construction Contract.

**Liens.** Create or allow to be created any lien or charge upon the Collateral or the Improvements.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**GENERAL PROJECT PROVISIONS.** The following provisions relate to the construction and completion of the Project:

**Change Orders.** All requests for changes in the Plans and Specifications, other than minor changes involving no extra cost, must be in writing, signed by Borrower and the architect, and delivered to Lender for its approval. Borrower will not permit the performance of any work pursuant to any change order or modification of the Construction Contract or any subcontract without the written approval of Lender. Borrower will obtain any required permits or authorizations from governmental authorities having jurisdiction before approving or requesting a new change order.

**Purchase of Materials; Conditional Sales Contracts.** No materials, equipment, fixtures, or articles of personal property placed in or incorporated into the Project shall be purchased or installed under any Security Agreement or other agreement whereby the seller reserves or purports to reserve title or the right of removal or repossession, or the right to consider such items as personal property after their incorporation into the Project, unless otherwise authorized by Lender in writing.

**Lender's Right of Entry and Inspection.** Lender and its agents shall have at all times the right of entry and free access to the Property and the right to inspect all work done, labor performed, and materials furnished with respect to the Project. Lender shall have unrestricted access to and the right to copy all records, accounting books, contracts, subcontracts, bills, statements, vouchers, and supporting documents of Borrower relating in any way to the Project.

**Lender's Right to Stop Work.** If Lender in good faith determines that any work or materials do not conform to the approved Plans and Specifications or sound building practices, or otherwise depart from any of the requirements of this Agreement, Lender may require the work to be stopped and withhold disbursements until the matter is corrected. In such event, Borrower will promptly correct the work to Lender's satisfaction. No such action by Lender will affect Borrower's obligation to complete the Improvements on or before the Completion Date. Lender is under no duty to supervise or inspect the construction or examine any books and records. Any inspection or examination by Lender is for the sole purpose of protecting Lender's security and preserving Lender's rights under this Agreement. No default of Borrower will be waived by any inspection by Lender. In no event will any inspection by Lender be a representation that there has been or will be compliance with the Plans and Specifications

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

or that the construction is free from defective materials or workmanship.

**Indemnity.** Borrower shall indemnify and hold Lender harmless from any and all claims asserted against Lender or the Property by any person, entity, or governmental body, or arising out of or in connection with the Property, Improvements, or Project. Lender shall be entitled to appear in any proceedings to defend itself against such claims, and all costs and expenses attorneys' fees incurred by Lender in connection with such defense shall be paid by Borrower to Lender. Lender shall, in its sole discretion, be entitled to settle or compromise any asserted claims against it, and such settlement shall be binding upon Borrower for purposes of this indemnification. All amounts paid by Lender under this paragraph shall be secured by Lender's security agreement or Deed of Trust, if any, on the Property, shall be deemed an additional principal Advance under the Loan, payable upon demand, and shall bear interest at the rate applicable to the Loan.

**Publicity.** Lender may display a sign at the construction site informing the public that Lender is the construction lender for the Project. Lender may obtain other publicity in connection with the Project through press releases and participation in ground-breaking and opening ceremonies and similar events.

**Actions.** Lender shall have the right to commence, appear in, or defend any action or proceeding purporting to affect the rights, duties, or liabilities of the parties to this Agreement, or the disbursement of funds from the Loan Fund. In connection with this right, Lender may incur and pay reasonable costs, expenses and attorneys' fees. Borrower covenants to pay to Lender on demand all such expenses, together with interest from the date Lender incurs the expense at the rate specified in the Note, and Lender is authorized to disburse funds from the Loan Fund for such purposes.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Loan.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution or termination of Borrower's existence as a going business or the death of any partner, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Construction Contract.** The Improvements are not constructed in accordance with the Plans and Specifications or in accordance with the terms of the Construction Contract.

**Cessation of Construction.** Prior to the completion of construction of the Improvements and equipping of the Project, the construction of the Improvements or the equipping of the Project is abandoned or work thereon ceases for a period of more than ten (10) days for any reason, or the Improvements are not completed for purposes of final payment to the General Contractor prior to November 2, 2006, regardless of the reason for the delay.

**Transfer of Property.** Sale, transfer, hypothecation, assignment, or conveyance of the Property or the Improvements or any portion thereof or interest therein by Borrower or any Borrower without Lender's prior written consent.

**Condemnation.** All or any material portion of the Collateral is condemned, seized, or appropriated without compensation, and Borrower does not within thirty (30) days after such condemnation, seizure, or appropriation, initiate and diligently prosecute appropriate action to contest in good faith the validity of such condemnation, seizure, or appropriation.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Events Affecting General Partner of Borrower.** Any of the preceding events occurs with respect to any general partner of Borrower or any general partner dies or becomes incompetent.

**Change in Ownership.** The resignation or expulsion of any general partner with an ownership interest of twenty-five percent (25%) or more in Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT; REMEDIES.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may, at its option, but without any obligation to do so, and in addition to any other right Lender without notice to Borrower may have, do any one or more of the following without notice to Borrower: (a) Cancel this Agreement; (b) Institute appropriate proceedings to enforce the performance of this Agreement; (c) Withhold further disbursement of Loan Funds; (d) Expend funds necessary to remedy the default; (e) Take possession of the Property and continue construction of the Project; (f) Accelerate maturity of the Note and/or Indebtedness and demand payment of all sums due under the Note and/or Indebtedness; (g) Bring an action on the Note and/or Indebtedness; (h) Foreclose Lender's security agreement or Deed of Trust, if any, on the Property in any manner available under law; and (i) Exercise any other right or remedy which it has under the Note or Related Documents, or which is otherwise available at law or in equity or by statute.

**COMPLETION OF IMPROVEMENTS BY LENDER.** If Lender takes possession of the Collateral, it may take any and all actions necessary in its judgment to complete construction of the Improvements, including but not limited to making changes in the Plans and Specifications, work, or materials and entering into, modifying or terminating any contractual arrangements, subject to Lender's right at any time to discontinue any work without liability. If Lender elects to complete the Improvements, it will not assume any liability to Borrower or to any other person for completing the Improvements or for the manner or quality of construction of the Improvements, and Borrower expressly waives any such liability. Borrower irrevocably appoints Lender as its attorney-in-fact, with full power of substitution, to complete the Improvements, at Lender's option, either in Borrower's name or in its own name. In any event, all sums expended by Lender in completing the construction of the Improvements will be considered to have been disbursed to Borrower and will be secured by the Collateral for the Loan. Any such sums that cause the principal amount of the Loan to exceed the face amount of the Note will be considered to be an additional Loan to Borrower, bearing interest at the Note rate and being secured by the Collateral. For these purposes, Borrower assigns to Lender all of its right, title and interest in and to the Project Documents; however Lender will not have any obligation under the Project Documents unless Lender expressly hereafter agrees to assume such obligations in writing. Lender will have the right to exercise any rights of Borrower under the Project Documents upon the occurrence of an Event of Default. Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently.

**ADDITIONAL DOCUMENTS.** Borrower shall provide Lender with the following additional documents:

**Articles or Agreement of Partnership.** Borrower has provided or will provide Lender with a certified copy of Borrower's Articles or Agreement of Partnership, together with an appropriate partnership consent or agreement authorizing and designating one or more of the partners to execute this Agreement, the Note and any and all Security Agreements directly or indirectly securing repayment of the same, and to consummate the borrowings and other transactions as contemplated under this Agreement, and to consent to the remedies following any default by Borrower as provided in this Agreement and in any Security Agreements.

**Opinion of Counsel.** When required by Lender, Borrower has provided or will provide Lender with an opinion of Borrower's counsel certifying to and that: (1) Borrower's Note, any Security Agreements and this Agreement constitute valid and binding obligations on Borrower's part that are enforceable in accordance with their respective terms; (2) Borrower is validly existing and in good standing; (3) Borrower has authority to enter into this Agreement and to consummate the transactions contemplated under this Agreement; and (4) such other matters as may have been requested by Lender or by Lender's counsel.

**COVENANT DEFAULT.** Borrower or Guarantor (collectively the "Borrower") fails to comply with or perform to the financial covenants of this Agreement and fails to provide additional information and statements as Lender may request from time to time. _____ please initial If a Covenant Default shall occur then the Lender may increase the loan rate by 1.0% _____, please initial.

**ADDITIONAL PROVISION.** Borrower agrees that no junior lien or encumbrance of any nature against all or any portion of the Property shall be given, permitted or suffered by Borrower until the loan is repaid in full. (_____) (_____) please initial.

**SCHEDULE OF RELEASE PRICES.** See Exhibit "One" attached hereto and made a part hereof. (_____) (_____) please initial.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Authority to File Notices.** Borrower appoints and designates Lender as its attorney-in-fact to file for the record any notice that Lender deems necessary to protect its interest under this Agreement. This power shall be deemed coupled with an interest and shall be irrevocable while any sum or performance remains due and owing under any of the Related Documents.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.**

**Indemnification of Lender.** Borrower agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's attorneys' fees, as well as Lender's architect's and engineering fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

Page 9

all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement and the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party. (Initial Here ___ )

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Construction Loan Agreement, as this Construction Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Construction Loan Agreement from time to time.

**Architect's Contract.** The words "Architect's Contract" mean the architect's contract between Borrower and Simon Puglisi Company , the architect for the Project.

**Borrower.** The word "Borrower" means Maria Vista Estates, a California General Partnership and includes all co-signers and co-makers signing the Note.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Completion Date.** The words "Completion Date" mean November 2, 2006.

**Construction Contract.** The words "Construction Contract" mean the contract between Borrower and D. G. Johnson Construction, the general contractor for the Project, and any subcontracts with subcontractors, materialmen, laborers, or any other person or entity for performance of work on the Project or the delivery of materials to the Project.

**Contractor.** The word "Contractor" means D. G. Johnson Construction, the general contractor for the Project.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan and any guarantor under a completion guaranty agreement.

## CONSTRUCTION LOAN AGREEMENT
### (Continued)

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future buildings, structures, facilities, fixtures, additions, and similar construction on the Collateral.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means SECURITY PACIFIC BANK, its successors and assigns.

**Loan.** The word "Loan" means the loan or loans made to Borrower under this Agreement and the Related Documents as described .

**Loan Fund.** The words "Loan Fund" mean the undisbursed proceeds of the Loan under this Agreement together with any equity funds or other deposits required from Borrower under this Agreement.

**Note.** The word "Note" means the promissory note dated November 2, 2005, **in the original principal amount of $7,850,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Plans and Specifications.** The words "Plans and Specifications" mean the plans and specifications for the Project which have been submitted to and initialed by Lender, together with such changes and additions as may be approved by Lender in writing.

**Project.** The word "Project" means the construction project as described in the "Project Description" section of this Agreement.

**Project Documents.** The words "Project Documents" mean the Plans and Specifications, all studies, data and drawings relating to the Project, whether prepared by or for Borrower, the Construction Contract, the Architect's Contract, and all other contracts and agreements relating to the Project or the construction of the Improvements.

**Property.** The word "Property" means the property as described in the "Project Description" section of this Agreement.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in the "Project Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

# CONSTRUCTION LOAN AGREEMENT
## (Continued)

Page 11

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS CONSTRUCTION LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS CONSTRUCTION LOAN AGREEMENT IS DATED NOVEMBER 2, 2005.

BORROWER:

MARIA VISTA ESTATES, A CALIFORNIA GENERAL PARTNERSHIP

PENDER PROPERTIES, INC., General Partner of Maria Vista Estates, a California General Partnership

By: _____
    Mark  Pender, President of Pender Properties, Inc.

BENING COMPANY, LLC, General Partner of Maria Vista Estates, a California General Partnership

By: _____
    Erik   Benham,   Managing   Member   of   Bening
    Company, LLC

LENDER:

SECURITY PACIFIC BANK

By: _____
    Authorized Signer

# EXHIBIT "12"

**JULIE RODEWALD**
San Luis Obispo County — Clerk/Recorder
Recorded at the request of
First American Title Company

MEL
12/02/2005
4:10 PM

RECORDING REQUESTED BY
First American Title Company

AND WHEN RECORDED MAIL TO:
Erik Benham
124 West Main Street, Ste. C
Santa Maria, CA 93458

| DOC#: | 2005100978 | Titles: 1 | Pages: | 4 |
|---|---|---|---|---|

| Fees | 18.00 |
|---|---|
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $18.00 |

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 090-301-061 and 062, & 063                          File No.: 1802-phase1 (MB)

## SUBORDINATION AGREEMENT

## (EXISTING TO NEW)

**NOTICE: THIS SUBORDINATION AGREEMENT RESULTS IN YOUR SECURITY INTEREST IN
THE PROPERTY BECOMING SUBJECT TO AND OF LOWER PRIORITY THAN THE
LIEN OF SOME OTHER OR LATER SECURITY INSTRUMENT.**

THIS AGREEMENT, made this Second day of December, 2005, by

Maria Vista Estates, a California General Partnership

Owner of the land hereinafter described and hereinafter referred to as "Owner", and

Erik Benham, an individual

present Owner and Holder of the Deed of Trust and Note first hereinafter described and hereinafter referred to as
"Beneficiary";

### WITNESSETH

THAT WHEREAS, Owner has executed a Deed of Trust dated March 18, 2003 to Trincon, Inc., as Trustee,
covering:

Lots 1 through 60 of Tract No. 1802, Phase 1, in the County of San Luis Obispo, State of California, according to
the Tract Map recorded in Book 25, Page 36 of Tract Maps in the office of the County Recorder of said County.

to secure a Note in the sum of $6,385,000.00, dated March 18, 2003, in favor of Erik Benham, an individual,
which Deed of Trust was recorded April 18, 2003 , as Instrument No. 2003-040009, of said County; and

WHEREAS, Owner has executed, or is about to execute, a Deed of Trust and Note in the sum of $7,850,000.00,
dated November 2, 2005, in favor of Security Pacific Bank, hereinafter referred to as "Lender", payable with
interest and upon the terms and conditions described therein, which Deed of Trust is to be recorded concurrently
herewith; and

WHEREAS, it is a condition precedent to obtaining said loan that said Deed of Trust last above mentioned shall
unconditionally be and remain at all times a lien or charge upon the land hereinbefore described, prior and
superior to the lien or charge of the Deed of Trust first above mentioned; and

Page 1 of 4

SPB00363

A.P.N.: 090-301-061          Subordination Agreement - continued          File No.: 1802-phase1 (MB)
                                                                          Date: December 02, 2005

WHEREAS, Lender is willing to make said loan provided the Deed of Trust securing the same is a lien or charge upon the above described property prior and superior to the lien or charge of the Deed of Trust first above mentioned and provided that Beneficiary will specifically and unconditionally subordinate the lien or charge of the Deed of Trust first above mentioned to the lien or charge of the Deed of Trust in favor of Lender; and

WHEREAS, it is to the mutual benefit of the parties hereto that Lender make such loan to Owner; and Beneficiary is willing that the Deed of Trust securing the same shall, when recorded, constitute a lien or charge upon said land which is unconditionally prior and superior to the lien or charge of the Deed of Trust first above mentioned.

NOW, THEREFORE, in consideration of the mutual benefits accruing to the parties hereto and other valuable consideration, the receipt and sufficiency of which consideration is hereby acknowledged, and in order to induce Lender to make the loan above referred to, it is hereby declared, understood and agreed as follows:

(1)    That said Deed of Trust securing said Note in favor of Lender, and any renewals or extensions thereof, shall unconditionally be and remain at all times a lien or charge on the property therein described, prior and superior to the lien or charge of the Deed of Trust first above mentioned.

(2)    That Lender would not make its loan above described without this subordination agreement.

(3)    That this agreement shall be the whole and only agreement with regard to the subordination of the lien or charge of the Deed of Trust first above mentioned to the lien or charge of the Deed of Trust in favor of Lender above referred to and shall supersede and cancel, but only insofar as would affect the priority between the Deeds of Trust hereinbefore specifically described, any prior agreement as to such subordination including, but not limited to, those provisions, if any, contained in the Deed of Trust first above mentioned, which provide for the subordination of the lien or charge thereof to another Deed or Deeds of Trust or to another Mortgage or Mortgages.

Beneficiary declares, agrees and acknowledges that

(a)    He consents to and approves (i) all provisions of the Note and Deed of Trust in favor of Lender above referred to, and (ii) all agreements, including but not limited to any loan or escrow agreements, between Owner and Lender for the disbursement of the proceeds of Lender's loan;

(b)    Lender in making disbursements pursuant to any such agreement is under no obligation or duty to, nor has Lender represented that it will see to the application of such proceeds by the person or persons to whom Lender disburses such proceeds and any application or use of such proceeds for purposes other than those provided for in such agreement or agreements shall not defeat the subordination herein made in whole or in part;

(c)    He intentionally and unconditionally waives, relinquishes and subordinates the lien or charge of the Deed of Trust first above mentioned in favor of the lien or charge upon said land of the Deed of Trust in favor of Lender above referred to and understands that in reliance upon, and in consideration of, this waiver, relinquishment and subordination specific loans and advances are being and will be made and, as part and parcel thereof, specific monetary and other obligations are being and will be entered into which would not be made or entered into but for said reliance upon this waiver, relinquishment and subordination; and

(d)    An endorsement has been placed upon the Note secured by Deed of Trust first above mentioned that said Deed of Trust has by this instrument been subordinated to the lien or charge of the Deed of Trust in favor of Lender above referred to.

**NOTICE: THIS SUBORDINATION AGREEMENT CONTAINS A PROVISION WHICH
ALLOWS THE PERSON OBLIGATED ON YOUR REAL PROPERTY SECURITY TO
OBTAIN A LOAN A PORTION OF WHICH MAY BE EXPENDED FOR OTHER
PURPOSES THAN THE IMPROVEMENT OF THE LAND.**

**(ALL SIGNATURES MUST BE ACKNOWLEDGED)**

Page 2 of 4

SPB00364

A.P.N.: 090-301-061          Subordination Agreement - continued     File No.: 1802-phase1 (MB)
                                                                     Date: December 02, 2005

*IT IS RECOMMENDED THAT, PRIOR TO THE EXECUTION OF THIS SUBORDINATION AGREEMENT, THE PARTIES
CONSULT WITH THEIR ATTORNEYS WITH RESPECT THERETO.*
(CLTA SUBORDINATION FORM "A")

Maria Vista Estates, a California General Partnership

By:  Erik Benham

Its: Bening Company LLC Managing Member

By:  Mark Pender

Its: Pender Properties, President

STATE OF      CALIFORNIA                       }
                                               }ss.
COUNTY OF     SAN LUIS OBISPO                  }

On December 2, 2005, before me, M Belli, Notary
Public, personally appeared Erik Benham + Mark Pender
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies) and that his/her/their signature(s) on the instrument the person(s) or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature  M Belli

My Commission Expires: 5-4-07                   *This area for official notarial seal*

Notary Name: Maure Belli
Notary Registration Number: 1415577       Notary Phone: 805 474 6257
                                          County of Principal Place of Business: SLO

Page 3 of 4

SPB00365

A.P.N.: 090-301-061          Subordination Agreement - continued          File No.: 1802-phase1 (MB)

Date: December 02, 2005

BENEFICIARY?

Erik Benham, an Individual

STATE OF _Celifornia_ )ss
COUNTY OF _San Luis Obispo_ )

On _December 2, 2005_ before
me, _M Belli_, Notary Public, personally appeared
_Erik Benham_, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

M. BELLI
Comm. # 1415566
NOTARY PUBLIC - CALIFORNIA
San Luis Obispo County
My Comm. Expires May 4, 2007

Signature _M Belli_

My Commission Expires: _5-4-07_          This area for official notarial seal

Notary Name: _Maure iBelli_          Notary Phone: _805- 474-6287_
Notary Registration Number: _1415577_          County of Principal Place of Business: _SLO_

Page 4 of 4

END OF DOCUMENT

SPB00366

FORM B104 (08/07)                                                                2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Erik Benham | DEFENDANTS  Ezra Namvar, Fidelity National Title Co.<br>Federal Deposit Insurance Corporation, in receivership of<br>Security Pacific Bank; Mark Pender, Pender Properties Inc.; and<br>DOES 1-100   Dianna Voss |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>In Pro Per<br>221 Town Center West #256<br>Santa Maria, CA 93458 | ATTORNEYS (If Known)<br>Please See Attached |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor   ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Fraud; Aiding & Abetting Fraud; Conversion; Civil Conspiracy to Commit Conversion; Breach of Fiduciary Duty; Obstruction of
Justice; Bankruptcy Fraud; Forgery; Fallaciousness against Bankruptcy Estate; Extrinsic Fraud; Intrinsic Fraud;  and  Declaratory
Relief.

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| FRBP 7001(1) – Recovery of Money/Property | FRBP 7001(6) – Dischargeability (continued) |
|---|---|
| ☐ 11-Recovery of money/property - §542 turnover of property | ☐ 61-Dischargeability - §523(a)(5), domestic support |
| ☐ 12-Recovery of money/property - §547 preference | ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☒ 13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability - §523(a)(8), student loan |
| ☐ 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>(other than domestic support) |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien** | ☐ 65-Dischargeability - other |
| ☐ 21-Validity, priority or extent of lien or other interest in property | |
| | **FRBP 7001(7) – Injunctive Relief** |
| **FRBP 7001(3) – Approval of Sale of Property** | ☐ 71-Injunctive relief – imposition of stay |
| ☐ 31-Approval of sale of property of estate and of a co-owner – §363(h) | ☐ 72-Injunctive relief – other |
| | **FRBP 7001(8) Subordination of Claim or Interest** |
| **FRBP 7001(4) – Objection/Revocation of Discharge** | ☐ 81-Subordination of claim or interest |
| ☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | |
| | **FRBP 7001(9) Declaratory Judgment** |
| **FRBP 7001(5) – Revocation of Confirmation** | ☐ 91-Declaratory judgment |
| ☐ 51-Revocation of confirmation | |
| | **FRBP 7001(10) Determination of Removed Action** |
| **FRBP 7001(6) – Dischargeability** | ☐ 01-Determination of removed claim or cause |
| ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | **Other** |
| ☐ 62-Dischargeability - §523(a)(2), false pretenses, false<br>representation, actual fraud | ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et seq.<br>☒ 02-Other (e.g. other actions that would have been brought in state<br>court if unrelated to bankruptcy case) |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement,<br>larceny | |
| **(continued next column)** | |

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ |

| Other Relief Sought |
|---|
| |

FORM B104 (08/07), page 2                                                       2007 USBC, Central District of California

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR | | BANKRUPTCY CASE NO. |
|---|---|---|
| Maria Vista Estates, a California General Partnership | | 9:07–bk-10362 |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| CENTRAL DISTRICT | NORTHERN DIVISION | ROBIN RIBLET |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| | | |

| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| | | |

**SIGNATURE OF ATTORNEY (OR PLAINTIFF)**

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| 6·18·10 | Erik Benham |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.